ROWELL *v.* CITY OF BATTLE CREEK.

1. MUNICIPAL CORPORATIONS— PUBLIC OFFICERS — REMOVAL FOR CAUSE—HEARING—POLICE MATRON.

In an action by a police matron of a city for salary due, after a dismissal without any hearing or cause shown, the court erroneously charged the jury that, because she did nothing towards the performance of her duties after a certain date, she acquiesced in her dismissal, although she had previously notified the police commissioner that she considered her dismissal unlawful and continued to apply for her salary. The question of her acquiescence in the dismissal was a question of fact for the jury.

2. SAME—SALARY—APPOINTIVE OFFICER.

An officer appointed for a definite term, or during good behavior, cannot be removed without notice, hearing, and a determination of the existence of cause for such removal, after giving the officer an opportunity to be heard in his defense.

3. SAME.

An appointee as police matron of a city, under 1 Comp. Laws, § 3492, was not removable on the ground of incompetency, without a hearing.

4. SAME—EVIDENCE.

That salary was paid to another police matron was immaterial where more than one might be appointed.

5. SAME.

Plaintiff was entitled to show, as bearing on her acquiescence in her removal by the police commission, that she thereafter talked to members of the council and informed them of her claim.

Error to Calhoun; North, J. Submitted January 19, 1912. (Docket No. 127.) Decided March 12, 1912.

Assumpsit by Harriet L. B. Rowell against the city of Battle Creek for salary as police matron. Judgment for plaintiff for less than the amount claimed. Plaintiff brings error. Reversed.

*Stewart & Jacobs*, for appellant.

*D. C. Salisbury*, for appellee.

STONE, J.  The plaintiff was appointed police matron of the defendant city May 14, 1900, which office she still claims to hold by virtue of such appointment. This is a statutory office, created by Act No. 109 of the Public Acts of 1897. A part of section 2 of said act, being section 3492, 1 Comp. Laws, reads as follows:

"The police matron shall not be appointed for any definite term, but shall hold office until removal. She may be removed at any time for cause by the mayor, or, in cities having a police commission, by said commission, or, in county jails where appointed by the sheriff, by said sheriff; by a written order stating the cause of removal."

It is the claim of the plaintiff that she has not been allowed to perform the duties of the office since May 1, 1909, although no removal was attempted until July 20, 1909.  Her salary was $20 per month, and she brings suit to collect for August, 1908 (the commission claims to have suspended her during that month), and from May 1, 1909, to May 1, 1910, the time of the commencement of this suit, as is shown by the plaintiff's bill of particulars. The defendant pleaded the general issue, giving no notice of any special defense.

The undisputed testimony shows that it was, and always had been, the custom and duty of the police to notify the matron when her presence was required at the station, and that such custom continued without exception to the time of the trial. The undisputed testimony also showed that plaintiff had never refused to respond to such calls; and, with the exception of a temporary absence from the city, had always been reached when needed. During all this time and up to the time of the trial, no complaint or charge had ever been made against the plaintiff of which she had any notice. At the meeting of the police commission on April 20, 1909, the commission passed a resolution to suspend the plaintiff, and at its next meeting, May 4,

1909, the commission changed the word "suspended" to "dismissed." Notice of this pretended "suspension" was sent to plaintiff. Such action was taken without previous notice to the plaintiff, and without any complaint or charges being filed with the commission, as required by rule 89 of the Police Manual hereinafter referred to. After such action, and on May 11, 1909, the plaintiff informed the police commission that she considered all previous action against her to be illegal, and notified them of her willingness to perform her duties; also, that she had so notified the chief of police; that she claimed the right to notice if charges were brought against her; and that she expected to continue to perform the duties of her office until it was terminated in accordance with law. At the same time plaintiff, by letter, notified the chief of police that she expected to perform her duties, and would expect him to notify her as he had in the past. These communications were ignored by the police commission and the chief of police, and at a meeting of the commission, held on June 22, 1909, the acting chief was ordered to request plaintiff not to enter the women's department of the police station. The undisputed testimony shows that the plaintiff held herself in readiness to perform her duties at all times, and claimed to be the police matron of the defendant city; but the action of the police commission and police force made it impossible for her to perform the active duties of police matron.

On July 20, 1909, the police commission passed a resolution purporting to remove and dismiss the plaintiff from the office of police matron. That resolution was as follows:

"Whereas, Mrs. Harriet Rowell was on April 22, 1909, by resolution of this board, suspended from the office of police matron; and

"Whereas, by reason of the advanced age of said Mrs. Harriet Rowell, she is, in the opinion of this board, unfitted to properly perform the duties of police matron:

"Now, therefore, resolved, that said Mrs. Harriet Rowell be, and she is hereby removed and dismissed from the office of police matron in the city of Battle Creek, be-

cause, on account of her advanced age, she has not been, and is not, competent to properly fulfill the duties of said office. This removal and dismissal to take effect this twentieth day of July, A. D. 1909.

"Resolved further, that the recorder notify Mrs. Harriet Rowell that she has been removed and dismissed from the office of police matron for the city of Battle Creek. Carried."

Acting under instructions of the police commission, the city recorder inclosed a copy of this resolution to the plaintiff in a letter, bearing date July 21, 1909, reading as follows:

"Mrs. HARRIET ROWELL,
      "Battle Creek, Mich.
"*Dear Madam:*
"Inclosed find copy of a resolution adopted by the police commission of the city of Battle Creek at its meeting held under date of July 20, 1909.

"I was also instructed to say to you that should you care to meet the commission for a hearing, they would be pleased to meet you at a regular meeting of the police commission which will be held under date of August 3, 1909, at eight o'clock p. m.
                          "Yours respectfully,
                              "THOS. THORNE,
                                  "City Recorder."

It is undisputed that the commission met at 8 o'clock p. m. August 3, 1909, and continued in session until 10 o'clock p. m., and that neither the plaintiff nor any one representing her appeared before the commission. This action of July 20, 1909, was without previous notice to plaintiff, and without complaint having been made or charges filed against her. She presented her bill for salary to the common council in July and October, 1909, and in March, 1910. Payment having been refused, this suit was commenced.

Upon the trial of the case, the court took the position that the action of the commission in attempting to suspend the plaintiff in August, 1908, was illegal, and that plaintiff should recover for that month; further, that it

was a question of fact whether she was entitled to recover from May to July 20, 1909, depending upon whether or not she in fact had abandoned the office. The court further held that after July 20, 1909, she was not entitled to any salary because she had not performed any services; that she did not tender any services, and, in fact, acquiesced in an irregular dismissal. Certain rules and regulations were read in evidence from the "Police Department Manual," a manual provided for the use of the police department as follows:

### "Police Matron.

"Rule 142. The police matron shall have, subject only to the general control of the authorities in charge, the entire care of all women and children held under arrest in the station in which she serves or to which she is attached, and she may, at any time, call upon any police officer in such station for assistance. She shall reside at or near the station to which she is attached and shall hold herself in readiness to answer any call therefrom, so long as any women or children remain confined therein. She is at all times subject to such rules and regulations as the board of police commissioners may prescribe.

### "Disposal of Complaints or Charges.

"Rule 89. Should verbal complaints be made by any person to an officer of the department against a member of the force, the said officer shall, without delay, inform the chief of same, who shall immediately summon the accused to appear before him. Should it appear to the chief, after proper investigation, that the complaint is of a frivolous character, or of small importance, the chief may, in his discretion, permit the officer to remain on duty, reporting the same in writing to the board at their next regular meeting, with such recommendations as he may deem proper, accompanied by such facts as he may have collected in the meantime. Should the aforesaid verbal complaint appear to be of grave character, or such as demand urgent or immediate investigation, the chief shall immediately suspend the accused, taking possession of his emblems of authority, and cause such charge or charges to be reduced in writing, and transmit a copy thereof to the

president of the board without delay, thus insuring a speedy trial of the accused.

" Immediately following suspension, or upon receipt of written charges, or after proper complaint has been lodged against any member of the force (except as hereinbefore provided), the accused shall be cited by the chief or commissioners to appear before the board at the next regular meeting of that body, or a special meeting that may be called for such purpose.

## " Mode of Procedure at Trial.

"Rule 90.   When an officer appears before the board in answer to charges that may have been preferred against him, after hearing a copy of such charges read, should he plead guilty to the same, such plea shall be final, and may be disposed of accordingly.   Should the accused, however, plead not guilty, then the commissioners shall set a day for trial, and cite the former to appear.   The accused shall furnish the board with the names of all witnesses he may wish to summon in his behalf, and the clerk and the president shall issue proper subpœnas to insure such defendant's witnesses' also complainant's witnesses' appearance at said trial."

It already appears that the court directed a verdict for plaintiff for the month of August, 1908.   The jury also rendered a verdict for her salary for May and June, and to July 20, 1909.   We are not therefore concerned with the charge of the court upon that branch of the case. The court, however, directed a verdict against the plaintiff for all salary claimed after July 20, 1909; and in so charging used the following language:

" It may be sufficient for the purposes of this suit that if I simply say to you that, as a matter of law, after the date of July 20, 1909, she is not entitled to recover.   But, in order that you may appreciate the attitude of the court and feel that it is not an arbitrary matter, I am going to explain to you the reason for taking that position, which is this:   It seems from the undisputed evidence that on the date of July 20, 1909, the police commission took some action, regardless of whether it was regular or irregular, looking toward the discharge of Mrs. Rowell as police matron, and the undisputed evidence shows that after

that date she did absolutely nothing toward the performance of her duties as police matron; in other words, she acquiesced in that attempt to discharge, except possibly with the exception of making an application for the salary which would be incident to the discharge of the duties of the office.    Under these circumstances, I say to you, as a matter of law, that she cannot recover for the period of time covered by the declaration in this case following July 20, 1909."

The plaintiff has brought the case here upon writ of error, and has, among other things, assigned error upon this portion of the charge.

After reading this record carefully, we are of opinion that the court was in error in charging the jury that the evidence was undisputed that the plaintiff had acquiesced in the attempt to discharge her.    The question as to whether plaintiff acquiesced in the action of the commission was one of fact for the jury.    *Attorney General* v. *Maybury*, 141 Mich. 31 (104 N. W. 324, 113 Am. St. Rep. 512).    There was testimony that her nonperformance of services was because the police department, acting under instructions from the police commission, made it impossible for her to perform any services.    She testified that she had at all times held herself in readiness to perform her duties, and had so notified the proper officers.    In our opinion there was evidence enough in the record upon that subject to have carried the case to the jury.    However, if the plaintiff was legally discharged as matron by the action of the police commission on July 20, 1909, then the plaintiff would be in no position to recover here for services subsequently rendered, and the instruction of the court as to her acquiescence would be harmless error.

This presents the meritorious question in the case, which is: Was the action of the police commission of July 20, 1909, such as terminated plaintiff's office of police matron?    The exact question here presented as to an appointive officer for an indefinite term has not been passed upon by this court.    It is true that this statute was before this court in the case of *McNab* v. *Common Council of*

*Bay City*, 125 Mich. 51 (83 N. W. 1022). But in that case the appointment was "on probation during the pleasure" of the commissioners. And it was held that the appointee could not contest the regularity of her subsequent removal on the ground that there was no written order stating the cause of removal. In that case Chief Justice MONTGOMERY used the following language:

"It is undoubtedly true that the statute contemplates an appointment until removed for cause; but the relator was not given such an appointment, but a probationary appointment during the pleasure of the board only, and accepted such appointment, and asked to be assigned to duty under such an appointment and no other. If there was irregularity in the appointment, the relator was not compelled to accept it, and we do not think she is in a position to now assume an entirely different character of appointment."

In Mechem on Public Officers, at section 454, that author says:

"Where the appointment or election is made for a definite term, or during good behavior, and the removal is to be for cause, it is now clearly established by the great weight of authority that the power of removal cannot, except by clear statutory authority, be exercised without notice and hearing, but that the existence of the cause, for which the power is to be exercised, must first be determined after notice has been given to the officer of the charges made against him, and he has been given an opportunity to be heard in his defense"—citing many authorities, both English and American.

In *Hallgren* v. *Campbell*, 82 Mich. 255 (46 N. W. 381, 9 L. R. A. 408, 21 Am. St. Rep. 557), the question arose in an action of replevin for some plows and scrapers, with reference to the removal of a street commissioner appointed for the term of one year. In that case it was held that, wherever cause must be assigned for the removal of an officer, he is entitled to notice and a chance to defend. Mr. Justice CAHILL, speaking for the court, said:

"We have not found any case where an officer who

was appointed for a fixed term (and when the power of removal was not expressly declared by law to be discretionary) has been held to be removable except for cause; and, wherever cause must be assigned for the removal of the officer, he is entitled to notice, and a chance to defend"—citing *Field* v. *Commonwealth*, 32 Pa. 478; *State* v. *City of St. Louis*, 90 Mo. 19 (1 S. W. 757).

In the last-cited case, which had to do with the removal of a police justice of the city of St. Louis, appointed for a specified term, and removable only for cause, the court said:

"Where an officer is appointed during the pleasure, or where the power of removal is discretionary, the power to remove may be exercised without notice or hearing. But where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused, and after notice, with a reasonable opportunity to be heard before the officer or body having the power to remove. *Gaskin's Case*, 8th Term Rep. 209; *Field* v. *Commonwealth, supra; State* v. *Bryce*, 7 Ohio, 82, pt. 2; Dillon, Mun. Corp. (3d Ed.), §§ 250-254."

The case of *Board of Street Commissioners* v. *Williams*, 96 Md. 232 (53 Atl. 923), is a very instructive one upon this subject. By the charter of Hagerstown it was provided that the board of street commissioners—

"Shall appoint regular policemen, not exceeding ten, to serve under such regulations and for such compensation as they (the street commissioners) may direct, * * * and said policemen shall be subject to removal for cause."

It was held that policemen appointed under the act were entitled to hold their offices so long as they were competent and efficient, and that the power of the board to remove them could only be exercised for some cause affecting the ability and fitness of the officer to perform his duties, and after notice of charges against him and an opportunity to be heard. In that case (96 Md., at page 237 [53 Atl., at page 924]), the court said:

"In the case at bar we have a statute authorizing the

appointment of *regular* policemen who '*shall be subject to removal for cause;*' and the questions are, *first*, what is the extent or limit of their tenure when appointed, and, *secondly*, for what cause may they be removed? With these questions solved, the legal principles already alluded to will be easily applied.

"The statute fixes no other term or tenure than is included in the provision that the appointees shall be 'regular policemen' who 'shall be subject to removal for cause.' Looking to the nature of the service to be performed— that is, to the preservation of the tranquillity, the good order and the security of the community—it may well be concluded that the legislature intended these conservators of the peace, described as *regular*, therefore, constant, fixed, and not temporary policemen to serve, when appointed, until removed *for cause.* Fixity of tenure in such positions is the tendency now of an enlightened public opinion. As no definite number of years was named for these *regular* policemen to hold, and as no other contingency was designated for the termination of their services than a removal for cause, it necessarily follows that when once appointed they are entitled to continue in office until removed therefrom *for cause.* A removal for cause is, therefore, the only limitation fixed by the statute to their tenure. This being so, an appointment is in legal effect an appointment during good behavior, or so long as the appointee is competent to discharge the duties of the office or efficient in the performance of them. The term is not, therefore, indefinite, nor is it determinable at the mere will of the appointing power. True, the term may be put an end to, but when terminated it must be terminated for cause. An act of the legislature of Maine established a board of police commissioners in Biddeford with 'authority to appoint, establish, and organize the police force of said city, including the marshal and deputy marshal, *and to remove the same for cause,*' etc. The board of police commissioners removed one Andrews from the force. No charge or complaint had been made against him and no notice was given to him of the pendency of any proceeding for his discharge until after he was actually removed. Upon a petition for a writ of certiorari praying that the police commissioners be required to certify to the supreme judicial court their records respecting the removal of the petitioner, so that so much thereof as was illegal might be quashed, it was held that:

" 'The manifest purpose of the act was to create a police force not subject to change from the result of recurring elections, but with a tenure to be cut short only for cause. That means cause affecting the individual to be removed. * * * The board was only authorized to remove for cause, and such removal is a judicial act to be made only upon notice and hearing.' *Andrews* v. *Police Board, etc.,* 94 Me: 68 (46 Atl. 801).

"* * * When the right to remove can be exercised only for specific cause, or for cause generally, the appointing power cannot arbitrarily remove the officer, and where the removal is to be had *for cause,* the power cannot be exercised until the officer has been duly notified and an opportunity has been given him to be heard in his own defense. 19 Am. & Eng. Enc. Law (1st Ed.), p. 562g and note 5. Or, as tersely put by the supreme court of Missouri:

" 'Where the appointment is during good behavior, or where the removal must be for cause, the power of removal can only be exercised when charges are made against the accused, and after notice, with a reasonable opportunity to be heard before the officer or body having power to remove.' [Citing cases above referred to.]

" Holding as we do that an appointment which can be terminated only for cause is not an appointment at will, but is, on the contrary, for a definite term, it follows on the authority of *Miles* v. *Stevenson,* 80 Md. 358 [30 Atl. 646], and *Field* v. *Malster,* 88 Md. 691 [41 Atl. 1087], without reference to the other cases just above cited, that the appellee was entitled to notice of the charges preferred against him and to an opportunity to be heard. As no such notice or opportunity was given, the removal of Williams was unauthorized, and he is entitled to be restored to his office."

See, also, *Todd, Mayor,* v. *Dunlap,* 99 Ky. 449 (36 S. W. 541, 18 Ky. Law Rep. 329); *Lease* v. *Freeborn,* 52 Kan. 750 (35 Pac. 817). A very instructive note upon this subject, appended to the case of *Kendrick* v. *Nelson,* is to be found in 12 Am. & Eng. Ann. Cas., at page 993. We are, therefore, constrained to hold that, where an officer is removable for cause, he is entitled to notice, and a chance to defend. We conclude, therefore, that the action of the police commission of July 20, 1909, was of no effect. As the case must go back to the circuit for a

new trial, we will call attention to some other questions raised by appellant in the assignments of error.

It is urged that evidence of abandonment and of acquiescence was not admissible under the general issue. We have looked in vain for any ruling or exception on the subject, and must hold that the question is not before us.

The fourteenth and fifteenth assignments of error relate to rulings as to payments having been made to another matron. We think that this evidence was immaterial and irrelevant, as there may be more than one matron appointed under the terms of the statute.

The seventeenth assignment alleges error in sustaining the objection of defendant's counsel to the following question asked plaintiff:

" I will ask you whether you have talked since the 20th of July, 1909, with members of the common council, and informed them of your claim against the city, or your rights, or what you believed to be your rights?"

We think that it would have been competent for the plaintiff to testify upon this subject, as bearing upon the questions of abandonment and acquiescence.

Other questions raised and discussed by counsel are not likely to arise upon another trial.

For the errors pointed out, the judgment of the circuit court is reversed, and a new trial granted.

MOORE, C. J., and STEERE, McALVAY, BROOKE, BLAIR, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.