## THOMPSON v. CIVIL SERVICE COMMISSION OF PROVO CITY et al.

No. 6481.   Decided February 16, 1943.   (134 P. 2d 188.)

*I. E. Brockbank,* of Provo, for appellants.

*A. Sherman Christenson* and *W. Dean Loose,* both of Provo, for respondent.

LARSON, Justice.

The District Court of Utah County issued a peremptory writ of mandate directing defendants, Civil Service Commission and the members thereof to reinstate plaintiff in his former position in the Classified Civil Service of Provo City; and directing the other defendants to pay plaintiff certain sums found by the court to be due plaintiff as back salary, as a member of the Provo City Fire Department. Defendants appeal. The case grows out of the following facts:

For more than twenty years plaintiff had been with the Provo City Fire Department; from 1925 to 1938 as a first-class fireman and when the Classified Civil Service became effective in February, 1938, he became Fire Captain under that service. On November 15, 1939, he was appointed chief of the Fire Department, a position not in Civil Service. At the time of his appointment as chief, and ever since, the rules of the Provo Civil Service Commission provided:

"When the Chief of Department (Fire or Police) retires as Chief, either because of expiration of term or that a successor is appointed, or that he is relieved for reasons other than for cause, if such Chief was in the classified Service at the time of his appointment as Chief, then he shall be returned to the position previously held by him in such classified Civil Service, and other officers may, if necessary, be reduced to previous rank in order that such person may be restored to his former place in the department.",

which provision was enacted pursuant to Sec. 15-9-11, R. S. U. 1933. On the evening of November 29, 1940, plaintiff, while driving the Fire Chief's car, on a private errand, was involved in a traffic accident on one of the city streets. It appears he was driving to the left of the center line of the street, and bumped the left fender of his car into the corner of the body of a coal truck. No people were injured and he did not stop but drove a mile or so to a refreshment stand where he drank two bottles of beer. Someone reported the collision to the Police Department, and about forty-five minutes later they found plaintiff in the Chief's car, parked in its usual place near the Fire Station. He had been drinking but was not intoxicated. After the collision with the truck, Thompson drank some beer, but there was no evidence before the Civil Service Commission nor before the trial court, that Thompson was drunk or intoxicated at any time of the day or night of the accident to the car. There was no evidence that Thompson had anything to drink that day or night until after the collision, nor that Thompson had ever been drunk or intoxicated when on duty, or while he was chief. The mere fact that at the moment of the impact of the car and truck, Thompson was driving to the left of the center of the highway does not brand that as an unlawful act, nor even as negligence per se, as we held in *Richards* v. *Palace Laundry*, 55 Utah 409, 186 P. 439. However, the next morning, the defendant, Mayor Mark Anderson, as head of the Department of Public Safety, which includes the Fire Department, requested plaintiff's resignation as Fire Chief. The following written resignation was handed to the Mayor:

"I hereby submit my resignation as Chief of the Provo City Fire Department, subject to the pleasure of your Honorable Commission. When this resignation is accepted, I should like to remain in the Fire Department in the capacity of fireman, formerly held by me."

And plaintiff was told to go back to the position he held in the Fire Department before becoming chief which plaintiff did, and in which place he functioned until January 17, 1941.

On December 2, 1940, the defendant, City Commission, accepted the resignation as shown by the following from the minutes of the Commission meeting:

"The following motion was introduced by commissioner, Mark Anderson, to wit:

"Provo, Utah, December 2, 1940, No. 344. I move that the resignation of Scott Thompson as Chief of Provo City's Fire Department be accepted and that Fireman Clarence Duke be appointed to act temporarily as Fire Chief until the position can be filled by regular appointment. (Signed) Mark Anderson, Commissioner. The foregoing Motion was unanimously passed by the Board of Provo City Commissioners, all members voting in favor thereof."

On December 5, 1940, defendant Civil Service Commission without giving plaintiff, Scott Thompson, any notice thereof or hearing thereon adopted a Resolution as follows:

"That the Civil Service Commission decline to accept the application of Scott Thompson to be reinstated to the position previously held in the civil service, *when and if presented.*" (Italics added.)

On January 8, 1941, defendant Civil Service Commission, without notice to plaintiff, Scott Thompson, and without any opportunity afforded him to be heard, decided and resolved that Scott Thompson had been relieved by the City Commission of his duties as Chief of the Fire Department "for cause" and was not entitled to reinstatement in the Department in his former civil service standing "because of a failure to apply for a hearing within five days." (Clearly meaning from the time his resignation as Chief was accepted by the City Commission.) On January 14, 1941, the Civil Service Commission addressed a communication to Earl Finlayson, the Fire Chief, instructing him that plaintiff, Scott Thompson, was on December 2, 1940, relieved as Fire Chief "for cause," and could not be returned to or work under the Classified Civil Service. On January 17, Finlayson advised Thompson of the action of the Civil Service Commission and that he was discharged effective January 31, 1941. Thompson, within five days, requested a

hearing before the Civil Service Commission on the discharge order of Chief Finlayson. At this hearing, the attorney for defendants contended, and the Civil Service Commission ruled, that the only question to be determined was whether the discharge of Thompson as Fire Chief on December 2, 1940, was a discharge "for cause" within the law. It was distinctly held that the validity of the discharge by Chief Finlayson must stand or fall upon the other question. Over the objections of Thompson, the Civil Service Commission then conducted an inquiry into the question as to whether the discharge as Fire Chief by the City Commission was "for cause." The Civil Service Commission on March 18, by a two to one vote, decided Thompson had been discharged "for cause" by the City Commission. Thompson continued to report for work at the Fire Station throughout February, until Chief Finlayson ordered him to stay away from the Station. In due time, Thompson filed with each defendant, except the Civil Service Commission, a written demand for his salary as Fire Captain, and upon their refusal to pay, commenced this action in the District Court. From a judgment in favor of plaintiff, defendants appeal.

While there were some disputations as to the nature and form of the proceedings in the District Court, and what were proper pleadings, those matters were all resolved in the District Court when the parties stipulated and waived any and all questions as to the pleadings and the nature of the proceedings, and requested the court to decide the matter on the merits. The question was thus stated by counsel:

"Mr. Christenson [attorney for plaintiff]: We claim, if the Court please, that there is one basic point involved in this case, and only one. And I think is was very effectively stated by Mr. Brockbank in the hearing before the Civil Service Commission, and it is squarely passed on by the Civil Service Commission, and it is squarely raised in the pleadings. That is, was Scott Thompson, on December 2, 1940, relieved as Fire Chief for cause? That is the only question involved here. If he were relieved for cause by the City Commission, within the contemplation of the statutes and rules of the Civil Service Commission and the general law, then we concede  *  *  *  that he was

not returned to the Civil Service and had no right to be. If he were not relieved for cause, as the term is understood in law, and as it was used in the Civil Service rules, then he was returned and he is illegally withheld from his office. Now, the Civil Service Commission ruled that he was relieved for cause, that he never was returned to the civil service, and didn't have a right to be returned after his appointment as chief. That is the vital point that separates the parties in this case.

"The Court: You concede that to be the issue, Mr. Brockbank, and the only issue in this case?

"Mr. Brockbank: I think that is the issue, Your Honor."

Since the action was submitted to the court below on that one question, that is the only question to be considered on this appeal. For convenience, we divide the question into two subdivisions: (1) Does the City Commission or the Civil Service Commission determine whether the removal of a department head is "for cause" or "for reasons other than for cause?" (2) What constitutes a removal "for cause" as distinguished from a "removal for reasons other than for cause;" or in other words, what are the indicia of removal for cause?

We refer to the statutes, ordinances, and Civil Service rules pertinent to the inquiry. Sec. 15-6-61, R. S. U. 1933, declares the city shall maintain a fire department. Sec. 15-6-62 declares the department shall consist of a chief, appointed by the City Commission, and such other members as may be provided by ordinance. We quote the next Section:

"15-6-63. Removal of Heads.

"The chief of the police or fire department of such cities may at any time be removed, without cause, without charges being preferred and without a trial, hearing or opportunity to be heard, by the board of commissioners whenever in its opinion the good of the service will be subserved thereby. Its action in removing the chief of either department shall be final and conclusive and shall not be reviewed or called in question before any court. The city recorder shall forthwith notify in writing the removed chief of his removal, and it shall not be necessary to state any cause for such removal. From the time of such notification the person so removed shall not in any case be entitled to any salary or compensation whatever."

Sec. 404, Revised Ordinances of Provo City, 1937, is a substantial reenactment of the statute just quoted. Sec. 15-9-11, R. S. U. 1933, provides for a Civil Service Commission in cities of first and second class—Provo is a second class city. Sec. 15-9-14, R. S. U. 1933 provides:

"Rules and Regulations.

"The civil service commission shall make all necessary rules and regulations to carry out the purposes of this article and for examinations, appointments and promotions. All such rules and regulations shall be printed by the civil service commission for distribution."

Sec. 15-9-10 puts the fire department, except the Chief, in the Classified Civil Service. The concluding sentence reads:

"The head of each of said departments may be appointed from the classified civil service, and upon the expiration of his term or upon appointment of a successor may be returned thereto."

Rule III, Sec. 12 Civil Service Rules of Provo City reads:

"* * * When a Chief of Department retires as Chief either because of expiration of term, or that a successor is appointed, or that he is relieved for reasons other than for cause, if such Chief was in the classified service at the time of his appointment as Chief, *then he shall be returned* to the position previously held by him in such Classified Civil Service, and other officers, may, if necessary, be reduced to previous rank in order that such person may be restored to his former place in the department." (Italics added.)

With this as a background, let us examine our problems. By the express provisions of the statute and of the city ordinance the head of the department, a Fire Chief is not in the classified Civil Service. He, therefore, is not under the supervision or control or direction of the Civil Service Commission, nor subject to its rules or regulations, except to the extent that the statute or the city ordinance may so subject him. This is expressly limited to his conduct with reference to the department members in the Civil Service. The Fire Chief is appointed by the City Commission without regard to Civil Service. Sec. 15-6-62,

R. S. U. 1933. If in the Civil Service when appointed Chief he is taken out of its service, rules and jurisdiction, while and during the period he holds the office or position of Chief. Such being the case, the rules of conduct prescribed for Civil Service employees has no application to the Chief, nor is he subject to discipline or penalty for violating them. He is amenable only to the City Commission, and subject in his conduct only to such rules and standards as the City Commission may set.

By statute and by ordinance, supra, the power of both appointment and removal of the Chief is vested in the City Commission, without reference or regard to the Civil Service Commission or its rules. Since the power of removal is vested exclusively in the City Commission, except as it might be exercised by the District Court upon proper complaint (*Skeen* v. *Craig,* 31 Utah 20, 86 P. 487; *Skeen* v. *Chambers,* 31 Utah 36, 86 P. 492) the City Commissioners, the removing body, is the only one that officially knows or can determine the reasons why it exercises its power of removal. Neither its findings, holdings, nor actions are subject to review or modification by the Civil Service Commission. See *Skeen* v. *Browning,* 32 Utah 164, 89 P. 642. It follows, therefore, that the Civil Service Commission has no legal power or authority to inquire into or determine whether a "cause" in law existed which would justify the removal of a department head by the City Commission. It might in a proper case, examine the record of the City Commission to see if that record discloses that the repartment head was removed "for cause." If the City Commission removes the department chief "for cause" the Civil Service Commission cannot review the action of the City Commission and determine that the grounds for removal were not proved or did not exist and overrule the action of the City Commission. By the same token if the City Commission removes the chief for reasons personal to themselves and not "for cause" the Civil Service Commission cannot review such action and find the removal was

"for cause." It can make no independent determination or consider evidence other than that shown by the action and record of the City Commission. It is not a question as to whether a cause existed for the removal of the Chief, but whether the removal was made "for cause." On that question, the action and record of the City Commission is final.

It is common knowledge that when grounds are found, or believed to exist, which would justify formal charges against an officer for removal from office, or when such charges are preferred, the officer is ofttimes given the opportunity to resign instead of facing publication of charges, a hearing, and removal. We do not hold that in a proper case the Civil Service Commission may not go behind the resignation to the real facts as to the retirement from office, but it cannot go beyond the actual facts as to what the City Commission actually did, and why it did so. The records of the City Commission are presumed to reflect the truth of the occurrences. The Civil Service Commission may not determine whether the chief could have been removed for cause, nor whether he should have been removed for cause, nor whether cause existed for which he might have been removed. It may only determine whether or not, as shown by the record of the city commission, the chief is now out of office because he was removed from office for reasons for which he could have been removed from office if there were no statute or ordinance authorizing the City Commission to remove him without cause.

What then is the record as to Thompson's removal? What are the indicia of removal "for cause?" Appellants argue that since the City Commission can remove the chief without cause (statute and ordinance supra) it can remove him "without cause for cause" and can remove him "for cause without cause." To us it is a mass of confusion. Section 15-6-63, R. S. U. 1933, was first enacted in 1899, Laws of Utah 1899, c. 28, Sec. 8. Prior thereto the law was that the Chief of the Fire Department or of the Police Department

held office during good behavior, and could be removed only for cause, after written charges and a hearing thereon. Chap. LXXIII, Laws of Utah 1896. The rule now in force thus began in 1899, since which time the chief or head of the department may be removed without cause, without charges or a hearing at the pleasure of the City Commission. Under the earlier rule, a man holding during good behavior or for a fixed term could only be removed for cause after a hearing, because a removal implied a want of good behavior, and thus cast a stigma upon the official removed. To enable the City Commission to change the head of the department because it thought another man might do an even better job, or work more in harmony with it, or satisfy the public clamor, or for any other reason it thought might be for the good of the service, the legislature thought it advisable to change the law so as to permit such removal without stigma or reflection being cast upon the removed official. It was, therefore, provided that such officer could be removed without cause at the pleasure of the Commission. Such a removal at the pleasure of the Commission, without charges and an opportunity to be heard, would, therefore, be deemed a removal not for cause,—a removal for personal or political reasons, and therefore no stigma would attach to him. We cannot read into the law, the construction that an official may be removed under that statute, without charges preferred, and when he has accepted the removal and surrendered the office, have the Civil Service Commission, the City Commission or any other body contend that he was in fact removed for cause, and attach a stigma to him, and deny him his Civil Service Rights and standing and then say he cannot be heard to complain because he accepted the removal and did not demand a hearing.

Certainly it is the prerogative of the City Commission in removing the chief, to determine the reasons for that removal. And in so doing, they determine if the chief came

up from the Civil Service whether such removal shall be one which will bar him from returning to the civil service or will permit him to remain in the department service in a capacity other than as chief. That the removed official may not be misled, justice requires that he be informed, at the time of his removal, if it is intended to prevent his return to other service in the department, of such intention and the reasons therefor, so he may defend himself against the charges and the penalties. If the commission accepts his resignation, tendered at his own initiative or at its request, thus making a record which permits him to return to the civil service, neither it nor the civil service commission can thereafter impugn such record and impose penalties which the record does not show was intended at the time of the relinquishment of office. If the City Commission desires to let the chief resign and yet bar him from return to other service in the department, it can have him resign, from both the office of chief and from the force. Otherwise the record must show he was removed on grounds which constitute "cause" under the law, and that he had, or was given the opportunity for a hearing.

But it is said: "Thompson resigned at the request of the Mayor and did not demand a hearing." Since he held office only at the pleasure of the Commission, and could be removed by it at any time without cause, he could just as well resign as to be told he wasn't wanted any longer. It is a matter of common knowledge that people subject to removal at pleasure, are usually given, and take the opportunity to resign, thus making the quitting appear as of their own free will.

It is evident that the statute authorizing a removal without charges and a hearing was designed and intended to impute and imply a "removal not for cause." It cannot be used as a means of removing an official without charges and a hearing, and then permit the city or any of its agencies to thereafter proclaim, establish, or

make record that the removal had been "for cause" and thus "smear one over" on the official without a hearing and an opportunity to be heard and make defense.

And where the record is such as to be ambiguous or doubtful or not clear as to whether a removal was "for cause" or for "reasons other than for cause" justice demands, and the law requires that doubts be resolved in favor of the integrity of the officer and the removal be deemed one "not for cause."

The words "removed for cause" mean for reasons which the law and sound public policy recognize as sufficient warrant for removal; that is, "legal cause" and not merely a cause which the appointing power in the exercise of discretion may deem sufficient. *State ex rel. Matson* v. *O'Hern,* 104 Mont. 126, 65 P. 2d 619; *State ex rel. Holt* v. *District Court,* 103 Mont. 438, 63 P. 2d 1026; *Narragansett Racing Ass'n* v. *Kiernan,* 59 R. I. 79, 194 A. 49. The term "remove for cause" means some cause concerning the fitness or ability of the incumbent to perform the duty imposed upon him. It means inefficiency, incompetency or other kindred disqualifications. *Street Commissioners of Hagerstown* v. *Williams,* 96 Md. 232, 53 A. 923, 925. Power to remove a person from office for cause means that a reason must exist which is personal to the individual sought to be removed, which the law and sound public opinion will recognize as a good reason for another occupying the place. *In re Nichols* (N. Y.) 6 Abb. N. C. 474, 57 How. Prac. 395, 404; *State ex rel. Eckles* v. *Kansas City,* Mo. App., 257 S. W. 197; *State ex rel. Rawlings* v. *Kansas City,* 213 Mo. App. 349, 250 S. W. 927; *Drake* v. *State,* 53 N. J. L. 23, 20 A. 747. Where removal is for cause, notice and opportunity to be heard are necessary. The Montana court in *State ex rel. Nagle* v. *Sullivan,* 98 Mont. 425, 40 P. 2d 995, 1000, 99 A. L. R. 321, 329, states the rule thus:

" 'the law, in accordance with the principles of justice,—principles which are fundamental and eternal,—will require that notice be given before any person be passed upon, either in person, estate, or any

matter or thing to which he is entitled' (*State ex rel. Reid* v. *Walbridge*, 119 Mo. 383, 24 S. W. 457, 460, 41 Am. St. Rep. 663). * * *

"We do not assume to declare that, under this construction of the power granted, a condition might not arise which would justify * * * removing a member of the commission without notice and hearing * * * but we do hold that whenever the charges on which the Executive proposes to act involve malfeasance, misfeasance, or nonfeasance in office, or directly reflect upon the official or personal integrity of the incumbent [or his fitness to hold the office] whom he proposes to remove, the statute requires *notice* and the *opportunity to disprove*, if possible, the *charges made*. [Italics ours.]

"Defendant Baumgartner's pleadings offer to show that the Governor had ample cause for the removal * * * and based his action thereon * * *. His attempt to justify the action is unavailing as an ex post facto showing of cause cannot cure failure to give the necessary notice of hearing on such charges (*Board* [*of St. Com'rs of Hagerstown*] v. *Williams*, 96 Md. 232, 53 A. 923); 'every condition precedent must be fulfilled to give validity to the act of removal' (23 Am. & Eng. Ency. Law, 450)."

Justice Stewart, in his concurring opinion, indicates what constitutes "cause for removal." He says:

"* * * I am impelled to agree with the proposition that whenever the removal is based upon grounds of cause, ordinary fairness should dictate that the accused officeholder be given a hearing and an opportunity to defend and protect his good name, his reputation, and his official record. The injection into the matter of grounds which constitute cause, which involve moral turpitude and reflect upon the personal and official integrity of the officeholder, and in fact include misfeasance and malfeasance in office, brings the immediate matter within the realm of cause and rightfully demands notice and hearing."

The courts have uniformly held that a removal for cause requires charges, notice and a hearing, that without such procedure there can be no removal for cause. *State ex rel. Wehe* v. *Frazier*, 47 N. D. 314, 182 N. W. 545; *Rutter* v. *Burke*, 89 Vt. 14, 93 A. 842; *State ex rel. Reid* v. *Walbridge*, 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663; *Hayden* v. *City Council of Memphis*, 100 Tenn. 582, 47 S. W. 182; *Farish* v. *Young*, 18 Ariz. 298, 158 P. 845; *Andrews* v. *Police Board*, 94 Me. 68, 46 A. 801; *Board of St. Comm'rs* v. *Wil-*

*liams*, 96 Md. 232, 53 A. 923; *Rowell* v. *City of Battle Creek*, 169 Mich. 19, 135 N. W. 79, Ann. Cas. 1913D, 1204; *Ham* v. *Bd. of Police*, 142 Mass. 90, 7 N. E. 540. See also note in 99 A. L. R., pp. 554 to 557 inclusive. See discussion and notes in Sec. 2580, McQuillin Mun. Corp. Vol. 6, 2nd Ed. Also Sec. 581—1 of Vol. 2 of McQuillin on removal of Civil Service Officers.

This matter does not involve the right of the City Commission to remove Thompson as Fire Chief. The validity of that removal is admitted. The question is: Can the Civil Service Commission deprive Thompson of his Civil Service standing and rating because it concludes that the City Commission removed him for cause; that is, if in the judgment of the Civil Service Commission, there were facts upon which the City Commission would have been justified in removing Thompson? It is not contended that Thompson was wanting in honesty or efficiency in office, nor is it contended he violated any order or rule of the City Commission. The Civil Service Commission sought to penalize him because his personal private conduct did not conform to their personal standards, and take from him the rights, privileges and assets (his civil service standing) vested in him by the statutes of the state and ordinances of the city. It is not even contended that while a Civil Service employee, he violated any rule of the Service. By law, the Civil Service Commission obtains cognizance of removal of Civil Service employees only by appeal to the board from the action of the department head. Section 15-9-21, R. S. U. 1933. Yet here, the Civil Service Commission, before there was a matter before them, and before being asked to hear it, passed a resolution declaring it would deny an appeal when and if one was taken. On the hearing finally had, when Thompson appealed from the order of Chief Finlayson in February discharging from the Classified service, the Civil Service Commission said that it was only a "courtesy hearing," and refused to pass upon the discharge by the Chief (the only matter the statute gives them cognizance

of), and proceeded to determine that when the City Commission accepted the resignation of Thompson as Fire Chief, conditions were such that the Civil Service Commissioners, had they been the City Commission, would have discharged him as Fire Chief.

Since the records of the City Commission do not disclose that Thompson was removed as Fire Chief "for cause," and the testimony of Mayor Anderson (conceding for the arguments sake it is competent) shows that Thompson was not discharged "for cause," but because the Mayor was opposed to the Chief drinking, it follows that Thompson was not discharged as Chief "for cause," and was entitled to return to his place and duty in the Provo City Fire Department in the classified Civil Service, in the position he held before becoming Chief.

The judgment appealed from is affirmed. Respondent to recover costs.

MOFFAT, J., concurs.

WOLFE, Chief Justice (concurring).

I conclude that the opinion of Mr. Justice LARSON and the dissenting opinion of Judge HOYT divide on narrow grounds. Both appear to agree on the proposition that the scope of the inquiry of the Civil Service Commission is to determine whether the City Commission removed Thompson for cause or for reasons other than cause, with "cause" defined as some act or conduct which is not outside the swing within which reasonable minds might conclude that he was unfitted for the job of fire chief or more comprehensively as defined by the main opinion as "legal cause." Judge HOYT thinks that a demand resignation which was complied with plus amended minutes showing what caused his resignation to be requested, furnish the Civil Service Commission with a reasonable basis for concluding that he was removed for cause; that the court, a judicial tribunal, being limited to the matter of determining whether there

was substantial evidence from which the fact-finders could conclude as they did, could conclude that the demand resignation plus the reasons set out in the minutes was substantial evidence from which the Civil Service Commission could find as it did. I have decidedly no quarrel with the principle that unless the fact-finders acted without reasonable basis for their conclusion, that is, arbitrarily or without substantial evidence, their findings should be upheld. Judge HOYT thinks a compliance with a demanded resignation is tantamount to a waiver of hearing. I am doubtful as to this. I think it is equally consistent with a desire of the Commission to avoid the distaste of a discharge as with a removal for cause with a resignation as a shield. The City Commission has the responsibility of determining whether it wants to relieve a fire chief of his position, discharge him for cause or accept his resignation as well as the responsibility of determining whether his conduct as chief is such as should bar him from reverting to the force. If it accepts his resignation to shield him from disgrace or ignominy the resignation should waive all right to revert to the force. In this case, it failed to include such waiver but the City Commission actually permitted, in fact, the Mayor directed Thompson to take his old job on the force. Thompson's testimony in this regard was uncontradicted. He stated that:

"The Mayor said he would have to ask for my resignation as Chief, and I handed it to him. And he says, 'I don't want—' he says 'You are too valuable a man to lose in the department.' and he told me to go back over and go to work on the lights."

Certainly such action is not consistent with a discharge for cause which by law would have prevented him from reverting to the force. The Civil Service Commission failed to take this into account. It is confined in its inquiry to the action of the City Commission and the basis for it. Certainly where a resigned fire chief is directed to take his old position with the force it is, if not contradicted by such other

evidence that would undoubtedly constitute cause, evidence that he was not removed by the City Commission for cause. The fact that it assigned a reason which may be the basis of a simple discharge or a requested resignation rather than something which it considered so grave as to show such unfitness for the position of chief as not even to countenance his continuing on the force, cannot in the face of the evidence that he was permitted to assume his old job on the force be construed as cause. By the same reasoning a requested or demand resignation complied with cannot be considered tantamount to an admission by the deposed chief that his removal was for cause and that he waived notice and a hearing.

As before stated, a desire to avoid a removal for reasons other than cause may prompt a request for resignation and because it is complied with does not mean that the subject has admitted that his resignation is asked on account of cause and that he waives a hearing. He might be quite surprised if such construction were later placed on his actions. If he had been so apprised he might have demanded a hearing, insisted on cause being shown and if dissatisfied with the decision of the City Commission resorted to the courts to set it aside on the ground that it was arbitrary. After he accepts a position on the force and then is discharged from that position, the appeal is to the Civil Service Commission from that action and not from the action of the City Commission removing him from his position as fire chief. If only at that time he discovers that the minutes of the City Commission have been amended and on the basis of the reasons contained in the amended minutes the Civil Service Commission has construed the City's action as a discharge for cause he is at a disadvantage. He may have lost his right to directly challenge the action of the City Commission. His only right then is to challenge the findings of the Civil Service Commission on the ground that it has not properly construed the action of the City Commis-

sion or the basis therefor. This is quite a different right than that of challenging the action of the City Commission.

McDONOUGH, Justice (concurring).

I concur. I agree with the statement in the dissenting opinion of Judge HOYT to the effect that there may be a removal for cause under a proper state of facts without "formal charges, formal notice and a formal hearing." But the record before us does not reveal such state of facts. The resignation of respondent was submitted with a request that he be permitted to return to his position as fireman in the department. He was directed to do so, and the resignation as submitted was accepted. The action of the commission was formally entered in the minutes. More than a month later—on the day following adoption of the resolution of the Civil Service Commission of December 5th set out in the opinion of Mr. Justice LARSON—the minutes were amended to read that the mayor "had been advised" that the respondent had been guilty of the conduct therein recited and that he should be removed from his position as chief of the fire department; that his resignation had been demanded for that reason; and that the resignation was submitted by the mayor.

Whether the minutes as amended evidence an intention on the part of the City Commission to remove "for cause" by acceptance of the resignation, or merely state the reason why the mayor was moved to submit the resignation, is not free from doubt. But in my opinion the record leaves room for no semblance of doubt that respondent was not confronted with a situation which called on him to speak with reference to being "relieved for cause" or which afforded him the slightest opportunity to do so.

HOYT, District Judge (dissenting).

I dissent. I think the opinion takes an unrealistic view of the facts. The civil service rules provide that when a

chief of the department is relieved for reasons other than for cause he shall be returned to the position previously held by him in the civil service. In case of the removal of the chief it obviously becomes necessary to determine whether he was relieved for reasons other than for cause. In this case the plaintiff was notified by the new chief of the fire department that his employment in the department would terminate January 31, 1941, because he had theretofore been removed by the city commission from his office as head of the department for cause. It is said that this order was prompted by the civil service commission and shows a pre-judging of plaintiff's case without a hearing. That however is not determinative of the case here. The plaintiff appealed from this order, or notification, and asked for a hearing before the civil service commission. The statute, Sec. 15-9-21, R. S. U. 1933, provides that:

"Any person discharged may within five days from the issuing by the head of the department of the order discharging him appeal therefrom to the civil service commission, *which shall fully hear and determine the matter.* * * * The finding and decision of the civil service commission upon such hearing * * * shall be final." (Italics added.)

I think that, both by virtue of this statute and the civil service rule above quoted, it was the right and the duty of the civil service commission to inquire into and determine whether the plaintiff was relieved of his position by the city commission for cause. Pursuant to plaintiff's request he was granted a hearing at which he was present and represented by counsel. The majority of the civil service commission decided that plaintiff had been relieved of his position as chief by the city commission for cause, and that he was therefore not entitled to be reinstated, in his former civil service position. In support of that finding it is shown by the findings of the trial court that the minutes of the city commission as amended recite:

"Mayor Anderson stated that, he had been advised that Chief Scott Thompson, while in the chief's car had driven the same on the wrong

side of the road and into a truck on the night of November 29, 1940, and that he had been drinking. That due to his conduct he should be removed and that his resignation had been demanded for that reason. Whereupon the Mayor submitted the resignation of Scott Thompson, chief of the Provo City Fire Department." (J. R. 101)

The right of a city commission to amend its minutes is well established. *Everett et al.* v. *Deal,* 148 Ind. 90, 47 N. E. 219; *Ryder's Estate* v. *City of Alton,* 174 Ill. 94, 51 N. E. 821; *Mayhew* v. *Gay Head Dist.,* 13 Allen 129, *Becker* v. *Henderson,* 100 Ky. 450, 38 S. W. 857. The minutes as amended constitute competent evidence as to the proceedings of the city commission. R. S. U. 1933, 15-6-44. They obviously show that the action of the mayor in demanding the resignation of plaintiff was prompted by alleged misconduct on the part of plaintiff which the mayor considered sufficient cause for removal. The action of the city commission in acting upon the mayor's recommendation—accepting a resignation which had been given because of the mayor's demand—was obviously an approval of the mayor's action. I think these proceedings show that the plaintiff was relieved of his position for cause and not "for reasons other than for cause." I cannot agree that there can never be a removal for cause without charges, notice and a hearing—if by that is meant formal charges, formal notice, and a formal hearing. I think where a resignation is demanded and the officer is informed that the demand is made because of specified culpable misconduct, if he tenders his resignation without refuting the charges or requesting an opportunity to refute them, he may be considered to have waived formal notice, formal charges and formal hearing. A removal under such circumstances ought not to be considered a removal "for reasons other than for cause." If his civil service rating is affected by the action taken by the city commission the officer should, if he requests it, be afforded an opportunity to refute the charges before the civil service commission. In the present instance plaintiff requested a hearing and it was granted. The majority of the civil

service commission found that he had been relieved of his position as chief for cause. The minutes of the city commission as amended support such a finding. The trial court seems to have based its decision chiefly upon the conclusion that the civil service commission had no jurisdiction to inquire into or make a determination upon that question. I think that was error. I also think that since the finding of the commission is supported by competent evidence, it should not be interfered with by writ of mandate. Much is said in the findings and in the opinion by Mr. Justice LARSON about reception of irrelevant and incompetent evidence and other irregularities which are not jurisdictional. The issue in the case here is whether the final action taken by the civil service commission—the action of which plaintiff complains—was without jurisdiction or was so defective in procedure as to violate the requirements of due process. There is no allegation or finding that the acts or rulings of the civil service commissioners were prompted by malice or corrupt motives. The claim is that they misconceived their duties and functions. They may have done so in at first pre-judging plaintiff's status without a hearing. But the final action of the commission was taken after notice and hearing and the ruling is sustained by competent evidence, viz., the minutes of the proceedings of the city commission, which in my opinion clearly indicate that plaintiff was relieved of his position as head of the department for cause.

It is stated that the plaintiff was told to go back to the position he held in the fire department before becoming chief. It seems to me that the record before us does not support that statement. But if it is shown that the mayor or city commission told plaintiff to go back to his former position in the fire department, I think that would not reinstate him in his former civil service rating. I think the city commission could not relieve a chief of the department for misconduct and then require his reinstatement in his former civil service rating. The civil service rule governs as to that,

and it provides that he is not subject to reinstatement if relieved of his position as chief for cause. Neither the original minutes nor the amended minutes contain any recital that the city commission or mayor directed the plaintiff to go back to his former place as fireman in the department. It is said in the opinion that on the question of whether or not the removal was or was not for cause the record of the city commission is final. If such is the case can we say that the record shows the removal to have been for reasons personal to the commissioners and not for cause? Is the position of chief of a city fire department such an office that we can say as a matter of law that being drunk or driving the chief's car on the wrong side of the road and into a truck are such trifling occurrences that they cannot constitute legal cause for removal? If so I am uninformed as to the precedents establishing such a rule. It is true that an officer charged with misconduct should have notice and an opportunity to refute charges before being removed from office for cause. But if he is notified of the nature of the charges, as it appears plaintiff was in this case, and he then makes no denial, but tenders his resignation, I think it should be considered a waiver of a hearing and that a civil service commission, charged with the duty of deciding whether the removal was or was not for cause, is justified in saying that it was for cause.

"If an official * * * can, when his derelictions are discovered, resign, and be at once reinstated in his former position, and thus escape the effects of a violation of positive law, then the statute giving the right of removal might as well be repealed." *Skeen* v. *Paine,* 32 Utah 295, 296, 299, 90 P. 440, 442.

PRATT, Justice, on leave of absence.