[No. 34089.  *En Banc.*  April 25, 1957.]

JOHN J. KENNETT, *Appellant*, v. DAVID LEVINE *et al.,*
*Respondents.*[1]

[1]Reported in 310 P. (2d) 244.

*George Kahin, Robert K. Keller,* and *Robert J. Kennett,* for appellant.

*A. C. Van Soelen* and *Arthur Schramm,* for respondents.

Hill, C. J.—The superior court for King county sustained a demurrer to and dismissed an application by John J. Kennett for a writ to prohibit the city council of the city of Seattle from proceeding with a hearing to determine whether his removal from office as a member of the Seattle transit commission by the mayor should be confirmed. Mr. Kennett appeals, urging (1) that no cause is stated in the mayor's notice of removal, and (2) that a majority of the city council are prejudiced against him and will not accord him a fair hearing.

The appellant was appointed a member of the transit commission by a former mayor on January 9, 1954, for a six-year term. The Seattle city charter, Art. XXIII—dealing with the transit commission in so far as here material—provides:

"Commissioners may be removed by the mayor upon filing

notice of removal for cause with the city council, such removal to be effective only upon confirmation by a majority of all members of the city council."

The present mayor filed with the city council on October 17, 1956, a notice of removal for cause, and the council set a date for the hearing thereon. The hearing was originally stayed by an alternative writ of prohibition, issued out of the superior court for King county; and after the quashing of that writ by the superior court, it has been stayed by an order of this court designed to hold the situation *in status quo* pending this appeal. See *Kennett v. Levine* (1956), 49 Wn. (2d) 605, 304 P. (2d) 682.

The mayor's notice of removal sets forth that the appellant is a member of the bar of the state of Washington; that the law firm of which he is a member files claims for damages on behalf of individuals who have sustained personal injuries in connection with the operation of the transit system; that suit has been brought on one such claim for $177,852, and that other claims are in litigation. The concluding two paragraphs of the notice of removal are as follows:

"(8) That regardless of whether or not in any particular instance the office of Transit Commissioner was used by Mr. Kennett to gain confidential information not available to other lawyers, it is my considered view that the best interests of the City and of the Seattle Transit System require his removal from such office under the circumstances.

"(9) It is further my view that it is incompatible with the office for a Transit Commissioner, individually or as a member of a law firm, to file claims against the City involving Seattle Transit funds, which claims the Seattle Transit Commission has the final authority to allow or disallow, even though the practice is to follow the recommendations of the City Claim Agent and the Corporation Counsel; nor should such Commissioner, in my opinion, individually or as a member of a law firm bring lawsuits in behalf of private clients for personal injury, or otherwise, involving funds of the Seattle Transit System over which the Seattle Transit Commission has full authority, responsibility and control. To permit such practice may result in grave doubts arising in the minds of the public and reflect on the integrity of

such Commissioner, on the Seattle Transit Commission itself, and on other city officers including the Mayor and the City Council, who respectively appoint and confirm members of the Seattle Transit Commission and who are thereby concerned in the conduct of such officers under such appointment."

While the paragraphs in the mayor's notice of removal are numbered one to nine inclusive, they patently do not constitute a series of nine charges but, rather, a recital of circumstances and conditions that lead to his ultimate conclusion that it is incompatible with the office of a transit commissioner for that commissioner, individually or as a member of a law firm, to file claims against the city involving Seattle transit funds.

We are called upon to determine whether a cause for removal has been stated. If it has, the superior court would have exceeded its jurisdiction had it prohibited the city council from proceeding with its scheduled hearing on the mayor's notice of removal.

█ The appellant is not a state officer, and Art. V, § 3, of the state constitution, prescribing ". . . misconduct or malfeasance in office . . ." as grounds for removal of "All officers not liable to impeachment . . ." has no application to our present inquiry, nor has § 82, chapter 249, Laws of 1909, p. 915 [cf. RCW 42.20] implementing that section of the constitution. We are concerned solely with the meaning of the phrase "for cause," as used in the quoted section from the Seattle city charter. It means more than an arbitrary *ipse dixit* of the mayor, for that might be the outgrowth of mere whim, caprice, prejudice, or passion. It is not limited, however, to misconduct, or inadequacy of the occupant of the office. *Goodwin v. Oklahoma City* (1947), 199 Okla. 26, 182 P. (2d) 762; *Hunter v. Quick* (1938), 183 Okla. 19, 79 P. (2d) 590.

█ Cause implies a reasonable ground for removal and not a frivolous or wholly unsatisfactory or incompetent ground. If the cause assigned is a reasonable one, then whether under the circumstances it is sufficient to justify a removal is for the council to decide. But whether the

cause assigned can be regarded as reasonable, as a matter of law, is a question for the courts to determine. *Ayers v. Hatch* (1900), 175 Mass. 489, 492, 56 N. E. 612; *McKenna v. White* (1934), 287 Mass. 495, 192 N. E. 84.

To remove a person from office for "cause," some good reason must actually exist which is personal to the individual sought to be removed, and which the law and sound public opinion will recognize as a good cause for his no longer occupying the place. *Thompson v. Civil Service Comm.* (1943), 103 Utah 162, 134 P. (2d) 188; *State ex rel. Nagle v. Sullivan* (1934), 98 Mont. 425, 40 P. (2d) 995, 99 A. L. R. 321; *In re Nichols* (1879), 57 How. Pr. (N.Y.) 395, 404, 6 Abb. N. C. 474.

The mayor urges as that good reason, an incompatibility between appellant's position as a member of the transit commission and his membership in a firm representing tort claimants injured in consequence of the operation of the transit system. In oral argument, the contention was made that incompatibility is not a ground for divorce in this state, implying that if incompatibility exists the appellant should not be divorced from his position on the transit commission. Irrespective of what may be the rule in divorce actions, it has been long and universally recognized that no one should hold incompatible public offices. Throop on Public Officers (1892), 37, § 33; *People ex rel. Ryan v. Green* (1873), 5 Daly (N.Y.) 254, 46 How. Pr. 169.

Offices are incompatible when the nature and duties of the offices are such as to render it improper, from consideration of public policy, for one person to retain both. *State ex rel. Klick v. Wittmer* (1914), 50 Mont. 22, 144 Pac. 648; *State ex rel. Nebraska Republican State Central Committee v. Wait* (1912), 92 Neb. 313, 138 N. W. 159; *State v. Anderson* (1912), 155 Iowa 271, 136 N. W. 128; Mechem on Public Officers (1890), 268, § 422. Or, as was said in *Barkley v. Stockdell* (1933), 252 Ky. 1, 66 S. W. (2d) 43:

"The question [of incompatibility] is . . . whether the functions of the two are inherently inconsistent or

repugnant, or whether the occupancy of both offices is detrimental to the public interest."

The question of what is compatible and what is incompatible is often difficult of solution, and the principles upon which its solution depends cannot always be stated with exactness. Throop on Public Officers (1892), 37, § 33. This must of necessity be so, inasmuch as what public policy should be, and what is, detrimental to the public interest may, in many instances, be subject to a legitimate difference of opinion.

■ The cited cases deal for the most part with the issue of incompatibility between two public offices; but the same principles which require a public office holder to surrender one of two incompatible offices, must make an incompatibility between private business or professional interests and an appointive public office a cause for removal within the purview of a statute or a charter provision providing for removal for cause.

■ Quite apart from the hotly contested issue of whether the transit commission has authority to allow or disallow tort claims arising from the operation of the transit system (that the commissioners are presently not exercising such authority is conceded), we have no hesitancy in saying that a mayor could honestly, fairly, and reasonably, and not through caprice or prejudice, conclude that there is an incompatibility between a member of the transit commission, personally or through a member of his law firm, filing and prosecuting claims for clients against the city of Seattle arising out of the operation of the transit system, and the discharge of his duties as a public officer. One circumstance inherent in such a situation is that, if and when such a claim reaches the trial stage, the transit employee called as a witness by the city would find himself being cross-examined by a transit commissioner (even the chairman of the transit commission) or a member of his firm. That is but another situation where the functions of the two positions could be, with some reason, regarded as inherently inconsistent or repugnant, and detrimental to the public

interest and contrary to public policy.

We impugn neither the integrity nor the good faith of the appellant. Fairness requires that it be made clear that he advised the former mayor who appointed him, and the city council which unanimously confirmed him, that his firm in the past had handled tort claims arising out of the operation of the transit system and consequent litigation, and expected to continue to do so. He made it abundantly clear that he would not accept the appointment and did not want a confirmation, if there was any question as to the propriety of his serving as transit commissioner under those circumstances.

In view of his own frank statements at the time of his appointment and confirmation and his own certainty that no act of his, as a member of the transit commission, has been contrary to the public interest, we can understand why the appellant regards the notice of removal as an unwarranted reflection upon his integrity and bitterly resents the effort to remove him from a position in which there is no compensation except the knowledge of a public service well performed. We are, however, mindful that what seems to one mayor as devoid of any harm to or any incompatibility with the public interest, may seem to another mayor as fraught with danger to and incompatible with the public interest—and both be equally sincere.

As we have suggested, the jurisdiction of the courts in an area that is primarily administrative is and should be extremely limited. We have determined that a *prima facie* cause of removal was stated; hence, it follows that the superior court properly refused to prohibit the city council from proceeding with a hearing on the notice of removal, and properly sustained a demurrer to the appellant's application for a writ of prohibition.

Appellant urges further that a majority of the city council are prejudiced against him; that they will not give him a fair hearing, and for that reason they should be prohibited from proceeding with the hearing on the charges. If the truth of the allegations of prejudice is assumed, as it must be on a demurrer, and if it were assumed, also, that the

extent and character of the prejudice would disqualify the members of the city council named, the effect would be that the appellant could under no circumstances be removed from office because there would be no majority of the city council qualified to give him a hearing.

It is established by the great weight of authority that where a public officer, or an administrative board, or a legislative body—such as the city council—is given exclusive jurisdiction to conduct a hearing and determine whether an individual should or should not be removed from office, and no alternate or substitute is provided, disqualification will not be permitted to destroy the only tribunal with power in the premises. This is known as the doctrine or rule of necessity. *Emerson v. Hughes* (1952), 117 Vt. 270, 90 A. (2d) 910, 34 A.L.R. (2d) 539; *Mayor of Everett v. Superior Court* (1949), 324 Mass. 144, 85 N.E. (2d) 214; *State ex rel. Mitchell v. Sage Stores Co.* (1943), 157 Kan. 622, 143 P. (2d) 652; *Nider v. Homan* (1939), 32 Cal. App. (2d) 11, 89 P. (2d) 136; *Brinkley v. Hassig* (1936), 83 F. (2d) 351; *Sharkey v. Thurston* (1935), 268 N. Y. 123, 196 N. E. 766. See annotation, "Necessity as justifying action by judicial or administrative officer otherwise disqualified to act in particular case," 39 A. L. R. 1476.

Applying these general, well-established principles to the facts of this case, it is apparent that to disqualify a majority of the city council defeats the purpose of the charter provision and makes the appellant's removal for whatever cause an impossibility. Appellant relies on *State ex rel. Barnard v. Board of Education* (1898), 19 Wash. 8, 52 Pac. 317. In that case, we held that one member of a board of school directors was disqualified to sit as a member of the board in conducting a hearing on charges made against a superintendent of schools, when the director in question had confessedly prejudged the superintendent and announced his decision in advance of the hearing and insisted that he would adhere to that decision no matter what the evidence might be. Not only does the cited case rest upon a particularly aggravated state of facts, but, as we indicated in that opinion, the doctrine of necessity was not involved

inasmuch as the other directors could conduct the hearing. The writ of prohibition issued in that case went no further than to prevent the director referred to from participating in the hearing. In the present case, the appellant's allegations make the doctrine of necessity applicable, because a majority of the city council are alleged to be prejudiced against him.

The judgment of the superior court, dismissing the application for a writ of prohibition, is affirmed.

ALL CONCUR.

