[S. F. No. 20974. In Bank. May 29, 1962.]

LOUIS STORES, INC., Plaintiff and Appellant, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Defendants and Respondents; CALIFORNIA BEER WHOLESALERS ASSOCIATION, INC., Intervener and Respondent.

Orr, Heuring & Wendel, David I. Wendel and Victor D. Rosen for Plaintiff and Appellant.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, for Defendants and Respondents.

Albert G. Evans for Intervener and Respondent.

GIBSON, C. J.—Plaintiff, Louis Stores, Inc., owns and operates a number of retail grocery stores in Alameda and Contra Costa Counties and holds a wholesale beer and wine license and separate retail off-sale beer and wine licenses for 33 of the stores. It brought this proceeding in the superior court to obtain a writ of mandate to compel the Department of Alcoholic Beverage Control to vacate a decision revoking the wholesale license.[1] The trial court denied the peremptory writ of mandate, and Louis Stores has appealed.

The proceeding culminating in this appeal was commenced in 1956 when the California Beer Wholesalers Association (then known as the Northern California Beer Distributors Association) filed an accusation with the department charging Louis Stores with failing to perform the functions of a wholesaler as required of wholesale licensees by section 23779 of the Business and Professions Code. This section provides: "No wholesale license shall be issued to any person who does not in good faith actually carry on or intend to carry on a bona fide wholesale business by sale to retail licensees of the alcoholic beverage designated in the wholesale license, and the department may revoke any wholesale license when the licensee fails for a period of 45 days actively and in good faith to engage in the wholesale business and shall revoke any distilled spirits wholesaler's license held by any person who fails to comply with applicable provisions of Sections 23378, 23379,

---

[1]The Department of Alcoholic Beverage Control, created by the Constitution, is the successor to the State Board of Equalization with respect to control of alcoholic beverages in California. (Const., art. XX, § 22.) In this opinion the word "department" will be used to designate the present Department of Alcoholic Beverage Control, and the word "board" will be used to refer to the State Board of Equalization.

23776, 23777, and 23778. Sale by a wholesale licensee to himself as a retail licensee is not the transaction of a bona fide wholesale business."

After a hearing the department revoked the wholesale license, finding that for a continuous period of 45 days immediately prior to the filing of the accusation Louis Stores failed to engage in the wholesale business actively and in good faith within the meaning of section 23779 in that it did not make any sales of alcoholic beverages to retail licensees other than to itself; that no mitigating circumstances were involved; and that the continuance of the license would be contrary to public welfare and morals.[2]

In denying mandate, the superior court made findings with respect to additional matters appearing in the record before the department. Some of these findings relate to a prior proceeding against Louis Stores, which will be discussed later. Others are to the effect that it is not true that Louis Stores made substantial investments or otherwise changed its position to its detriment in reliance on prior interpretations of section 23779 and that Louis Stores has never exercised its rights under its wholesale license and has not desired or attempted to sell beer and wine at wholesale to persons other than itself.

There is no dispute as to the manner in which Louis Stores operated its alcoholic beverage business during the period covered by the accusation (March 1953-August 1956). It maintained a warehouse, of which a part was used for the handling of beer and wine. All beer and wine was purchased "at wholesale" from the manufacturer, brought into the warehouse, and subsequently delivered to the retail stores owned by Louis Stores for sale there to consumers. During the period involved no beer or wine was ever sold or attempted to be sold at wholesale to any retail licensees other than Louis Stores, and no wholesale prices were posted with the depart-

---

[2]Section 22 of article XX of the Constitution provides, in part, that the department has power, in its discretion, to deny, suspend, or revoke any alcoholic beverages license if it shall determine for good cause that the granting or continuance of the license would be contrary to public welfare or morals.

Section 24200 of the Business and Professions Code, insofar as pertinent here, provides that the grounds for suspension or revocation of licenses are (a) when the continuance of the license would be contrary to public welfare or morals or (b) the violation by a licensee of any rule of the department or "any other penal provisions of law" regulating the sale, use or possession of alcoholic beverages.

ment or its predecessor. Although not specifically stated, it appears to be clearly implicit from the record that Louis Stores thus used its wholesale license as a means of purchasing beer and wine for retail sales directly from manufacturers at prices lower than those paid by other retailers who did not have wholesale licenses and who made their purchases from wholesalers rather than from manufacturers.

The two principal questions to be determined on this appeal are (1) whether the decision in an earlier proceeding commenced before the board and determined in favor of Louis Stores was res judicata with respect to the right of the department to revoke the license, and, if not, (2) whether section 23779 may properly be interpreted as authorizing the department to revoke the license on the basis of the evidence presented here.

### Res Judicata

In 1948 Joseph W. Soares, district liquor control administrator for the board, brought a proceeding (sometimes referred to by the parties as *Soares* v. *Louis Stores, Inc.*) before that board seeking to revoke the beer and wine wholesale license of Louis Stores for the same reasons urged here but relating to conduct during a period of time prior to July 30, 1948. The applicable statute was then subdivision (f) of section 6 of the former Alcoholic Beverages Control Act as amended in 1947 (Stats. 1947, ch. 839, p. 2005) which, insofar as concerns the problem of res judicata involved here, contained language substantially the same as that now found in section 23779 of the Business and Professions Code. On March 12, 1953, the board refused to revoke the license, dismissing the accusation "without prejudice to the filing of an accusation charging a violation of subdivision (f) of section 6 of said act for a period or periods of time hereafter upon a showing that the holding of the beer and wine wholesaler's license by respondent does present a situation which is contrary to the public welfare and morals and detrimental to the public interest."[3]

The 1953 decision of the board was based on findings that Louis Stores purchased beer and wine in large quantities from breweries and wineries, warehoused it in a central warehouse, and distributed it to its retail stores; that for a period of

---

[3]The board had previously (November 16, 1950) revoked the license but subsequently granted a rehearing and suspended consideration of the charges.

45 days, as alleged in the accusation, Louis Stores failed to engage in the business of wholesaling beer and wine in that it did not sell beer or wine to persons licensed as retailers other than for sale at its own retail outlets; that this failure was not a violation of subdivision (f) ; and that the purchasing, warehousing, and distribution of beer and wine by Louis Stores under its wholesale license "has presented no problem which is contrary to public welfare and morals." The board further found that Louis Stores had made large investments in its distribution and warehousing system in reliance upon previous administrative application of the statute by the board, including the dismissal in 1944 of a similar accusation against Safeway Stores. In this connection the board declared that the subdivision was "in effect a 'grandfather clause' intended . . . to preserve to business organizations such as respondent herein the right to continue to hold beer and wine wholesaler's licenses so long as such organizations do not engage in activities in the beer and wine business which are contrary to public welfare and morals, and so long as the board finds in the exercise of its discretion that the continuance of the licenses is not contrary to public welfare and morals."

It is clear from the 1953 decision of the board that the method of operation then followed by Louis Stores was substantially the same as it is now and that the board considered such methods permissible under the statute unless special factors not present at the time of the decision were proved and were determined by the board in its discretion to be contrary to public welfare and morals. There do not appear to be any factors present now which did not exist in 1953 with respect to Louis Stores' method of operation, and it contends that, this being so, the 1953 decision is res judicata and determinative of its right to continue its methods of operation and retain its wholesale license until either the statute is changed or evidence is produced of changed circumstances justifying a determination by the department that the conduct of Louis Stores with respect to its wholesale license has become contrary to public welfare or morals.

The department was created by section 22 of article XX of the Constitution and has power to make decisions which are res judicata. (Cf. *Hollywood Circle, Inc.* v. *Department of Alcoholic Beverage Control,* 55 Cal.2d 728, 731-733 [13 Cal.Rptr. 104, 361 P.2d 712] ; *Covert* v. *State Board of Equal-*

*ization,* 29 Cal.2d 125, 131-132 [173 P.2d 545] [holding that the board, under former § 22 of art. XX had adjudicating power to make final decisions, subject to review only for excess of jurisdiction, errors of law, abuse of discretion, and insufficiency of evidence] ; *French* v. *Rishell,* 40 Cal.2d 477, 479-482 [254 P.2d 26] [decision of Industrial Accident Commission].) If res judicata is applicable here, however, it cannot operate as a direct bar to the maintenance of the second proceeding, within the primary aspect of the doctrine, but, rather, it can have only a limited application in its secondary aspect, commonly referred to as the doctrine of collateral estoppel. (See *Clark* v. *Lesher,* 46 Cal.2d 874, 880-881 [299 P.2d 865] ; *Sutphin* v. *Speik,* 15 Cal.2d 195, 201 et seq. [99 P.2d 652, 101 P.2d 497].) This is true because the proceeding now before us presents a cause of action different from the one determined in 1953, i.e., it is based on events occurring after March 12, 1953, rather than the events occurring before July 30, 1948, referred to in the earlier proceeding.

As pointed out in *Clark* v. *Lesher, supra,* under the doctrine of collateral estoppel a prior judgment, though based on a different cause of action, may operate as a conclusive adjudication as to issues actually litigated.

An important qualification of the doctrine of collateral estoppel is set forth in section 70 of the Restatement of Judgments, which reads as follows: "Where *a question of law* essential to the judgment is actually litigated and determined by a valid and final personal judgment, the determination is not conclusive between the parties in a subsequent action on a different cause of action, except where both causes of action arose out of the same subject matter or transaction; *and in any event it is not conclusive if injustice would result.*" (Italics added.) Comment f to this section explains: "The determination of a question of law by a judgment in an action is not conclusive between the parties in a subsequent action on a different cause of action, even though both causes of action arose out of the same subject matter or transaction, *if it would be unjust to one of the parties or to third persons to apply one rule of law in subsequent actions between the same parties and to apply a different rule of law between other persons.*" (Italics added.) The conclusion and reasoning of the Restatement find support in *United States* v. *Stone & Downer Co.,* 274 U.S. 225, 235-237 [47 S.Ct. 616, 71 L.Ed. 1013].

■ This court, in *Hollywood Circle, Inc.* v. *Department of Alcoholic Beverage Control, supra*, 55 Cal.2d 728, 732, accepted the general principle that with respect to res judicata some administrative determinations differ from court decisions and that as a consequence greater flexibility is required in applying the doctrine of res judicata to them. The opinion quoted from 2 Davis, Administrative Law Treatise (1958) 568, to the effect that although res judicata should be fully applied to some administrative actions and not at all to others, there is much administrative action that should be subject to a qualified or relaxed set of rules concerning res judicata.

Davis states that the last clause of section 70 of the Restatement concerning injustice is a qualification which "necessarily ought to apply to any set of rules concerning application of res judicata to administrative determinations," that the doctrine is weaker as to questions of law than as applied to questions of fact, and that it should be "qualified or relaxed to whatever extent is desirable for making it a proper and useful tool for administrative justice." (See 2 Davis, Administrative Law Treatise (1958) 558-559.) ■ The author also points out instances where res judicata should not be applied because of an adverse effect with respect to third persons not parties to the litigation or because public interest requires that relitigation not be foreclosed. (Pp. 561-566.)

■ In the present case both of these factors, i.e., public interest and effect upon third persons, strongly indicate that the prior determination of the board should not operate to preclude either the department or the courts from reexamining the statute and applying the correct interpretation (whether or not different from that of the board) to Louis Stores. ■ It is obvious that section 23779 concerns the public interest in an industry requiring close supervision and that it is an important part of an integrated and rather complex licensing and price regulating system. (*Cf. Allied Properties* v. *Department of Alcoholic Beverage Control*, 53 Cal.2d 141, 147-148 [346 P.2d 737].) Moreover, if the department's interpretation of the statute is correct, the record is ample to support the implied finding that continuation of the present use of Louis Stores' wholesale beer and wine license will be contrary to public welfare in that Louis Stores will thus secure the right to maintain an unfair competitive advantage over other retailers who do not have and cannot obtain such licenses

and therefore cannot purchase directly from breweries and wineries at prices lower than those charged by wholesalers.

Res judicata being inapplicable, the question remains whether, under the statute, the revocation of the license by the department was proper.

### Interpretation of the Statute

 Section 23779 clearly gives the department power to revoke a wholesale license in its discretion whenever the licensee fails for a period of 45 days to make sales to retail licensees other than himself. The statute, by use of the word "shall," flatly prohibits the issuance of a beer or wine wholesale license to any person who does not in good faith intend to make sales to retail licensees other than himself, and this provision, together with the permissive power of revocation given by the section to the department with respect to persons who already hold such licenses, without doubt establishes a legislative policy against methods of operation such as those employed by Louis Stores.

 The statute contains no requirement that, before the department can revoke a license, there must be evidence showing that such a method of operation is contrary to general welfare, and there is no basis for reading into the provision this restriction upon the power of the department. The Legislature may properly, as it has here, provide that certain conduct is contrary to public welfare, and the department may rely upon the legislative declaration without taking evidence as to the detrimental effect upon public welfare.

 The contemporaneous administrative interpretation of a statute by an administrative agency is, of course, entitled to great weight and will not be departed from unless clearly erroneous. (*Select Base Materials* v. *Board of Equalization*, 51 Cal.2d 640, 647 [335 P.2d 672].) The interpretation made by the board, however, was contrary to the language of the statute, and the department, as successor to the board, has correctly interpreted the statute as granting a discretionary power of revocation.

Louis Stores relies on the legislative history of a bill introduced in the Assembly in 1951, which proposed that subdivision (f) of section 6 be amended to expressly authorize beer and wine wholesale licensees to follow the method of operation in question here. The subject matter of the bill was submitted by the Assembly to the Interim Committee on Boards and Commissions, and on March 11, 1953, a majority of four of the

seven members of the committee filed a semifinal report recommending that the board keep the wholesale licenses of the grocery chain stores "in status quo" and that, if this be done, no further legislation would be required. After this report was filed the Legislature reenacted the statute without changing the language here in question, and it is argued that this shows that the Legislature approved and adopted the prior administrative construction.[4] (Stats. 1953, ch. 152, p. 976; Stats. 1955, ch. 447, p. 908.) However, where, as here, the administrative construction is erroneous, it does not govern the interpretation of the statute even though the statute is subsequently reenacted without change. (*Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 399 [175 P.2d 512]; *Nelson* v. *Dean,* 27 Cal.2d 873, 875 [168 P.2d 16, 168 A.L.R. 467]; *Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 757-758 [151 P.2d 233, 155 A.L.R. 405].)

Louis Stores further relies upon the general rule that where a discretionary power is delegated to an administrative body, the statute must contain some "ascertainable standard" to serve as a guide, citing *Wotton* v. *Bush,* 41 Cal. 2d 460, 468 [261 P.2d 256], and *State Board of Dry Cleaners* v. *Thrift-D-Lux Cleaners,* 40 Cal.2d 436, 448 [254 P.2d 29]. It is settled, however, that the Legislature need not lay down minutely defined standards and that sufficient standards for administrative action may be found by implication from the general purposes of a statute and from the reasons which must have led to its adoption. (*In re Petersen,* 51 Cal.2d 177, 185-186 [331 P.2d 24]; *Rescue Army* v. *Municipal Court,* 28 Cal.2d 460, 471 [171 P.2d 8]; *Wotton* v. *Bush, supra,* 41 Cal.2d at p. 469.) Section 23779 is a part of the general system of liquor regulation, which includes the establishment of orderly marketing conditions. (*Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141, 150 [346 P.2d 737].) This basic purpose of the liquor control law furnishes a general standard for guiding the department in determining whether persons holding wholesale liquor licenses should be permitted to continue, for more than 45 days, making wholesale deliveries solely to their own retail outlets.

---

[4] The language of the section and that of its predecessor (subd. (f) of § 6 of the former Alcoholic Beverages Control Act) has been changed in minor respects, but none of the changes has any bearing on the problem before us.

There is nothing to show that the department abused the discretion given to it by section 23779 when it revoked the wholesale license of Louis Stores. The record is sufficient to support the express finding of the department that there are no mitigating circumstances. The only such circumstance claimed is that Louis Stores invested money in its warehouse and distribution facilities in reliance upon the prior administrative ruling. It was for the department to weigh the evidence and determine its effect, and the department impliedly found that such reliance, if any, was insufficient to justify continuation of Louis Stores' method of operation when considered in the light of the adverse effect of this method upon other retailers who could not purchase liquor at the lower prices available to Louis Stores. The existence of an unjust purchase price discrimination is sufficient to support the department in exercising its discretion in determining to revoke the license.

There is no claim by Louis Stores that, if given the opportunity, it would have any desire to enter into a bona fide beer and wine wholesale business by selling to other retailers; hence there is no occasion for the imposition of a lesser penalty such as suspension of the license until such time as Louis Stores changes its methods of operation.

The judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied June 27, 1962.