[Civ. No. 21757.   First Dist., Div. Two.   Sept. 23, 1964.]

JAMES GORE et al., Plaintiffs and Respondents, v. MAL-
COLM HARRIS, as Director of the Department of Alco-
holic Beverage Control, Defendant and Appellant.

Stanley Mosk, Attorney General, Wiley W. Manuel and Victor. D. Sonenberg, Deputy Attorneys General, for Defendant and Appellant.

Myers, Hawley & Morley and Melvin L. Hawley for Plaintiffs and Respondents.

SHOEMAKER, P. J.—This is an appeal by Malcolm Harris, Director of the Department of Alcoholic Beverage

Control, from a judgment granting a peremptory writ of mandate vacating and setting aside the department's decision revoking the off-sale general liquor license of James and Mary Gore.

On September 22, 1961, an accusation was filed with the Department of Alcoholic Beverage Control charging James and Mary Gore, the owners of an off-sale general liquor license, with four violations of the Alcoholic Beverage Control Act.

The matter was tried on November 6 and 7, 1961, and the hearing officer for the Department of Alcoholic Beverage Control recommended that the Gores' license be revoked separately and severally as to each of the four counts under the authority of article XX, section 22, of the Constitution, and Business and Professions Code, section 24200, subdivision (a). The department adopted in its entirety the decision of the hearing officer. The Gores then appealed to the Alcoholic Beverage Control Appeals Board, which affirmed the department's decision as to Count III only, namely, that they failed to place the license in use within 30 days of its issuance, in violation of Business and Professions Code, section 24040. The appeals board, in so holding, specifically found that the reversal of Counts I, II and IV did not necessitate a remand to the department, since a penalty of revocation had been imposed separately upon each of the four counts.

The Gores thereafter petitioned the Santa Clara County Superior Court for a writ of mandate setting aside the decision revoking their license. The superior court issued an alternative writ and, after hearing, granted the peremptory writ.

Appellant now contends that the judgment must be reversed because the decision of the Department of Alcoholic Beverage Control was amply supported by the evidence and the trial court exceeded its authority by reweighing that evidence and formulating its own findings of fact. We agree.

The evidence produced at the hearing before the department showed that in December 1960 the Gores met Block, the owner of a combination snack bar and cigar store located at 540 Market Street, San Francisco. The store contained a small liquor department operated pursuant to an off-sale general liquor license. Block indicated his willingness to sell the license for $3,500, but informed the Gores that liquor sales were poor at that location, with gross sales averaging only $14 to $19 per day, and net profits equal to 20 per cent

of gross sales. The Gores replied that they were hopeful of transferring the license to another location, either in San Francisco or, in the event that certain pending legislation were enacted, to another county.

As a result of this discussion, the Gores' attorney prepared a lease and escrow agreement whereby they were to purchase Block's license and inventory. Block was to lease the liquor department in his store to them for $25 per month, and was to manage said department on their behalf. The Gores were to supply liquor as needed from a Los Altos store owned by them.

Prior to executing the lease and escrow agreement, the Gores took these documents to Brandstrup, an employee of the Department of Alcoholic Beverage Control, and obtained his approval thereof. The lease and escrow agreement were executed by the parties and on January 25, 1961, the Gores applied to the Department of Alcoholic Beverage Control for the issuance in their names of the Block liquor license.

On February 28, 1961, Block sold his store to Mariani. Although Mariani was at first unwilling to allow liquor sales to continue on the premises, he discussed the matter with Block and Gore on February 28 or March 1, 1961. Block told Mariani that if he would agree to keep the liquor license on the premises until such time as it could be transferred to another location, the Gores would compensate him for this service. Block also told Mariani that there was little likelihood that there would be any requests for liquor, since he had already informed his customers that he was no longer selling liquor. Upon receiving these assurances, Mariani reluctantly agreed to permit the liquor license to remain on the premises for the time being, in return for payments of $50 per month by the Gores. Mariani insisted, however, that all of the liquor inventory be removed from the premises except three to six half-pints which were displayed on a shelf. He also indicated that he would not allow the stock to be replenished once this limited supply had been sold. On March 8, 1961, in accordance with this arrangement, Mariani applied to the Department of Alcoholic Beverage Control for a license authorizing him to manage a liquor store.

On March 10, 1961, the liquor license in the Gores' name was issued, mailed to the premises at 540 Market Street, and forwarded to the Gores by Mariani. Upon receiving the license, Gore brought it back to 540 Market Street and hung it on the wall. On this occasion, Mariani again stated that

he would not authorize any additions to the liquor stock. He also insisted that the Gores remove the license from the premises as soon as they could possibly arrange to transfer or sell it.

On June 12, 1961, having failed to sell the license, the Gores surrendered it to the Department of Alcoholic Beverage Control. During the period from March 10, 1961, when the license was issued, until June 12, 1961, the date of its surrender, the Gores visited the licensed premises on only two occasions, and made no attempt to supervise the liquor department. The Gores never acquired a city business license, federal tax stamp, or state sales tax permit for the licensed premises, although they were aware that such permits and licenses were required and had previously procured them for another liquor store owned by them. Mariani stated that he had sold no liquor whatever during the period from March 10, 1961, to June 12, 1961.

Upon this evidence, the Department of Alcoholic Beverage Control found that the Gores had violated Business and Professions Code, section 24040, which provided in relevant part that "any license issued for a specific location shall be placed in use at that location within 30 days of the date of issuance or become null and void."[1]  The department further found that continuance of the license would be contrary to the public welfare and morals, and that revocation of the license was accordingly proper under article XX, section 22, of the Constitution, and Business and Professions Code, section 24200, subdivision (a).

The Alcoholic Beverage Control Appeals Board, in affirming the department's decision, placed considerable emphasis upon the evidence that respondents had removed virtually their entire liquor inventory from the premises prior to issuance of the license; that they never obtained the various licenses and permits necessary to the lawful operation of a retail liquor department; that although they were experienced licensees, they made virtually no attempt to supervise the operation of the liquor department subsequent to the issuance of the license; that they never asked Mariani to sell liquor on their behalf and requested only that he retain the license on the premises, apply for a manager's license, and keep a minimal amount of liquor on the premises;

---

[1] (Stats. 1955, ch. 1323, § 1, p. 2402.) Business and Professions Code, section 24040, was amended in 1963, and the words "or become null and void" were deleted. (Stats. 1963, ch. 1040, § 6.)

and that no liquor was ever sold subsequent to the issuance of the license. The board stated: "In our opinion the provisions of the Alcoholic Beverage Control Act contemplate that a transferee of a liquor license shall receive such license with the intent of exercising the privileges thereof. While it may be argued that events beyond the control of appellants frustrated their intention to carry out the original business arrangement, such does not absolve appellants from complying with statutory requirements. . . . Appellants, upon receiving notice as to Mariani's objection to continuing the liquor business, could have withdrawn from the transaction, thereby saving their investment. Such action would undoubtedly have caused some concern to Mr. Block. Under the factual situation presented, however, it unquestionably was the proper action to take. A discussion with the department during the first few days of March 1961 would have either resulted in withdrawal of departmental approval as to the contemplated transfer or possibly (depending upon the time factor) the department would have permitted the surrender of the license under rule 65."

The trial court, in vacating the order revoking respondents' license, supported its decision only by finding that respondents had placed their license in use within 30 days of its issuance and that said use consisted of displaying a small stock of liquor on premises which were open to the general public, maintaining the liquor license on said premises, and having the person in charge of said premises apply for a license to manage a liquor store. In the light of the record as a whole, we are satisfied that the trial court abused its discretion by overruling the department in this manner.

■ It is settled that the findings of the Department of Alcoholic Beverage Control must be sustained if they are supported by substantial evidence (*Brice* v. *Department of Alcoholic Beverage Control* (1957) 153 Cal.App.2d 315, 320 [314 P.2d 807]; *Morell* v. *Department of Alcoholic Beverage Control* (1962) 204 Cal.App.2d 504, 507-508 [22 Cal.Rptr. 405]; *Burako* v. *Munro* (1959) 174 Cal.App.2d 688, 692 [345 P.2d 124]), and that the superior court is without authority to exercise its independent judgment as to the effect and weight of that evidence. (*Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 131-132 [173 P.2d 545]; *Harris* v. *Alcoholic Beverage Control Appeals Board* (1963) 212 Cal.App.2d 106, 112 [28 Cal.Rptr. 74].) ■ Neither the appeals board nor the courts "may disregard or overturn

a finding of fact of the Department . . . for the reason that it is considered that a contrary finding would have been equally or more reasonable." (*Bowman* v. *Alcoholic Beverage Control Appeals Board* (1959) 171 Cal.App.2d 467, 471-472 [340 P.2d 652].) ▮ The function of an appellate court is likewise merely to determine whether the department's findings are supported by substantial evidence. (*Harris* v. *Alcoholic Beverage Control Board, supra,* at p. 113.) In making that determination, this court must resolve all conflicts in the evidence in favor of the department's decision and indulge in all legitimate and reasonable inferences to support it. (*Morell* v. *Department of Alcoholic Beverage Control, supra,* at p. 508.)

In the present case, the department's decision was amply supported by the evidence. Although respondents assert that revocation of their license can be upheld only by construing the term "use," as employed in Business and Professions Code, section 24040, to require a prescribed minimum volume of sales or level of business activity, we are not persuaded by this argument. The evidence was clearly sufficient to support a finding that respondents never operated the liquor department on *any* level of business activity, that customers were told liquor would no longer be sold on the licensed premises, and that the license and a token amount of liquor were kept on the premises, not in any genuine attempt to promote sales, but merely in order to create the outward appearance of compliance with section 24040.

Respondents make some attempt to suggest that their gestures of utilization ought to have been held to constitute "use" under Business and Professions Code, section 24040, because the department did not first promulgate regulations pursuant to the Administrative Procedure Act defining precisely what conduct would amount to such use. This argument is untenable. ▮ It is settled that a liquor license is a permit to do what would otherwise be unlawful, and that the department need not define by rule or law all of the things that will put that license in jeopardy. (*Cornell* v. *Reilly* (1954) 127 Cal.App.2d 178, 185 [273 P.2d 572].) ▮ Moreover, sufficient standards for administrative action may be found by implication from the general purposes of a statute, and from the reasons which must have led to its adoption. (*Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 760 [22 Cal.Rptr. 14, 371 P.2d 758].)

▮ Respondents next assert that revocation of their li-

cense was too severe a penalty. In support of this argument, they point out that Business and Professions Code, section 24040, was amended in 1963[2] and that failure to place a license in use within 30 days of its issuance no longer results in the *automatic* revocation of such license.[3] Respondents thus urge that the section, when applicable in its pre-1963 form, ought to be narrowly construed and held not to apply where the evidence of the licensee's guilt is at all questionable.

In the present case, the evidence of respondents' guilt was not closely balanced, and the department accordingly had no alternative but to find that respondents' license had become "null and void" pursuant to section 24040. Moreover, it must be remembered that the department also found that the continuation of respondents' license would be contrary to the public welfare and morals, and therefore based its decision to revoke the license on article XX, section 22, of the Constitution, and Business and Professions Code, section 24200, subdivision (a), as well as on Business and Professions Code, section 24040.

The department's decision to impose the penalty of revocation must be upheld.

Judgment reversed.

Agee, J., and Taylor, J., concurred.

---

[2]See footnote 1.

[3]Such a violation could still result in suspension or revocation of the license pursuant to Business and Professions Code, section 24200, subdivision (b), however, since that section authorizes such a penalty for "the violation or the causing or the permitting of a violation by a licensee of this division . . . ."