[Civ. No. 29235.   Second Dist., Div. Three.   Feb. 8, 1967.]

C. W. BERRY, Plaintiff and Respondent, v. CITY OF SANTA BARBARA, Defendant and Appellant.

Stanley T. Tomlinson, City Attorney, for Defendant and Appellant.

Gerald B. Parent and W. Edmund Parent II for Plaintiff and Respondent.

COBEY, J.—This is an appeal from a judgment for plaintiff-respondent, C. W. Berry, hereinafter called ''Contractor'' in the amount of $5,323.81 as the amount owing to him under a contract with defendant-appellant, the City of Santa Barbara, hereinafter called ''City'' to resurface and subseal certain of its streets.

The basis of this appeal is that the trial court prejudicially erred against the City in making the following finding: ''4. That the issues of plaintiff's performance of the terms of the contract and the liability for the asphalt entering the city sewers were heretofore decided in the case of *Hooker* v. *City of Santa Barbara, et al.*, Santa Barbara Municipal Court, No. 14150, and that the doctrine of collateral estoppel is applicable.''

The pertinent facts are as follows. On October 6, 1959, the Contractor's subcontractor, I. J. Ely Company pumped approximately 2½ tons of hot asphalt compound under pressure

into a number of holes in Mission Street in Santa Barbara. These holes were in the immediate vicinity of a pipe, known both as a "lamphole" and a "cleanout" and used for inspection and maintenance of city sewers. This pipe led from a manhole in the surface of the street to an underground city sewer main. The compound, without anyone knowing about it, entered this pipe and descended into this sewer main. From the main it went into one or more lateral household service sewers. The compound then cooled and hardened and blocked these sewers.

The next day the City discovered this blockage and demanded that the Contractor unblock these sewers and repair this damage. The Contractor refused to do this and the City thereupon employed sewer contractors and its own personnel to unblock these sewers and repair the damage to them[1] at a cost to it of $5,323.81 aside from the hereafter mentioned sewer belonging to one Marion O. Hooker.

It then withheld this sum from the payments due the Contractor under its aforementioned contract with the City. This withholding gave rise to the lawsuit which ended in the judgment which is the subject matter of this appeal.

Thereafter, one of the residential property owners, the just mentioned Marion O. Hooker, whose lateral household service sewer had been so blocked, brought suit for damages, by action No. 14150 in the Santa Barbara Municipal Court, against the City, the Contractor and his aforementioned subcontractor. In that action the City cross-complained against the Contractor and his subcontractor for indemnification of such damages pursuant to the provision therefor in the aforementioned contract between the parties.

This provision is as follows: "The contractor shall indemnify and save harmless the City of Santa Barbara, the City Council and the City Engineer from any suits, claims or actions brought by any person or persons for or on account of any injuries or damages sustained or arising in the construction of the work or in consequence thereof."

After a nonjury trial on August 1, 1961, the municipal court on January 22, 1962, gave judgment on the complaint

---

[1]These facts are taken from the allegations found in paragraphs II and III on pages 2 and 3 of the City's answer in this action. They are not covered in the matters agreed upon in the joint pretrial statement of the parties. There is no Reporter's Transcript on this appeal. However, there is nothing in the Clerk's Transcript, the briefs of the parties or the oral arguments of counsel to indicate in any way that these allegations are not true and correct, although deemed denied. (Code Civ.Proc., § 462.)

against the City in the amount of $404.42 and further adjudged that the City recover nothing on its cross-complaint. The basis of this adverse judgment on the cross-complaint were express findings by the municipal court, that although the contract between the parties was a valid one, its just-quoted "hold harmless" provision was unenforceable by the City against the Contractor and his subcontractor because neither of them was guilty of any act that was the proximate cause of Hooker's damages and that the sole proximate cause of such damages was the act of the City's employee in giving the subcontractor wrong information regarding the flow of sewage in the construction area. The municipal court further expressly found that both the Contractor and his subcontractor "performed their contract in accordance with the plans and specifications and under the terms in their respective contracts and are not guilty of any negligence contributing to the plaintiffs [*sic*] loss."

In the counterclaim portion of its answer filed in the superior court action, now before us, on September 26, 1960, many months before both the trial and the judgment in the aforementioned municipal court action, the City did not confine its affirmative defenses to the above-quoted "hold harmless" provision of the contract between the parties. It expanded the basis for such defenses to the following provisions of the specifications, which are a part of the contract.[2]

Section 3. "I. REMOVAL OF DEFECTIVE AND UNAUTHORIZED WORK. All work which is defective in its construction or deficient in any of the requirements of these specifications shall be remedied, or removed and replaced by the contractor in an acceptable manner, and no compensation will be allowed for such correction.

"Any work done beyond the lines and grades shown on the plans or established by the City Engineer, or any extra work done without written authority will be considered as unauthorized and will not be paid for.

"Upon failure on the part of the contractor to comply forthwith with any order of the City Engineer made under the provisions of this article, the City Engineer shall have authority to cause defective work to be remedied, or removed

---

[2]In its answer the City also relied on section 5K of the contract which provides that no personal liability arising under the contract shall attach to specified and unspecified city officers. This provision of the contract is obviously inapplicable to the controversy before us and reliance on it was evidently abandoned at the pretrial conference.

and replaced, and unauthorized work to be removed, and to deduct the costs thereof from any moneys due or to become due the contractor.''

Section 5. ''I. RESPONSIBILITY FOR DAMAGE. The City of Santa Barbara, or the City Engineer, shall not be answerable or accountable in any manner for any loss or damage that may happen to the work or any part thereof; or for any material or equipment used in performing the work; or for injury or damage to any person or persons, either workmen or the public; for damage to adjoining property from any cause whatsoever during the progress of the work or at any time before final acceptance.

''The contractor shall indemnify and save harmless the City of Santa Barbara, the City Council, and the City Engineer from any suits, claims or actions brought by any person or persons for or on account of any injuries or damages sustained or arising in the construction of the work or in consequence thereof. The City Council may retain so much of the money due the contractor as shall be considered necessary, until disposition has been made of such suits or claims for damages as aforesaid.''

Section 5. ''J. CONTRACTOR'S RESPONSIBILITY FOR WORK. Except as provided above, until the formal acceptance of the work by the City Council, the contractor shall have the charge and care thereof and shall bear the risk of injury or damage to any part thereof by the action of the elements or from any other cause, whether arising from the execution or from the non-execution of the work. The contractor shall rebuild, repair, restore, and make good all injuries or damages to any portion of the work occasioned by any of the above causes before final acceptance and shall bear the expense thereof, except such injuries or damages occasioned by acts of the Federal Government or the public enemy.''

We do not understand the City's reliance on the just-quoted subsection 3I and subsection 5J of the contract. The first subsection establishes the noncompensability of the work done under the contract which is either defective in construction or deficient in meeting the requirements of the specifications, or unauthorized. The second subsection places upon the Contractor, until the City's final acceptance of the work done under the contract, all risk of injury or damage to any part of such work from any cause. Both subsections relate solely to the Contractor's liability with respect to work done under the contract. Neither has anything to do with damage to

property, other than the work done under the contract, such as is involved here. Consequently, in our opinion, neither of these subsections affords any support whatsoever for the City's affirmative defenses set forth in its counterclaim.

This leaves as the only basis for such defense of the City, the above-quoted subsection 51. The first paragraph of this subsection, insofar as it is here relevant, states that the City shall not be liable for any damage to adjoining property from any cause whatsoever at any time before final acceptance of the work done under the contract. If this paragraph be construed as covering the sewers involved here as ''adjoining property,'' it is applicable. Furthermore it does not appear to have been expressly in issue in the municipal court action.[3] However, the judgment for damages in that case in favor of Hooker, the adjoining property owner, and against the City, runs directly contrary to the flat prohibition against such liability contained in this paragraph.

This brings us to the second paragraph of the section—the ''hold harmless'' provision—which was expressly in issue in the Hooker case. This paragraph, insofar as it is here involved, requires the Contractor to ''indemnify and save harmless'' the City from any suit brought by any person for or on account of damages sustained or arising in the construction of the work or in consequence thereof; and it expressly authorizes the city council to retain so much of the money due the Contractor under the contract, as it shall consider necessary, until disposition has been made of the issue.

It seems to us that the language of this paragraph would clearly cover the situation if the Contractor had repaired the damage to the City's main sewer line and had here brought suit for reimbursement from the City of the cost of such repair. But he did not do this. Instead, as has been stated earlier, he refused the City's demand to repair this damage and the City thereupon did the repair work itself through use of sewer contractors and its own personnel. Therefore, what is at issue in this lawsuit is the legality of the City's withholding from payments otherwise apparently due to the Contractor, the reasonable cost of such repair. This, in result

[3]The pleadings portion of the judgment roll in the municipal court action are not a part of the record on appeal. All of substance that was introduced in evidence in this connection in the action under review were the findings of fact and conclusions of law and judgment of the municipal court. From the record before us it does not appear that the general indemnification provision of the contract, paragraph VIII was expressly in issue in either of the cases.

though, is the same thing. The City in this suit by its affirmative defenses, is seeking to withhold from the money due the Contractor under the contract between them the reasonable cost to the City of the repair of the damage done to the sewers involved which was sustained and arose in the construction of the work and in consequence thereof.

Thus, finally we are brought to a consideration of the correctness of the finding of the trial court which the City has challenged.

We again quote this finding: ''4. That the issues of plaintiff's performance of the terms of the contract and the liability for the asphalt entering the city sewers were heretofore decided in the case of Hooker v. City of Santa Barbara, et al., Santa Barbara Municipal Court, No. 14150, and that the doctrine of collateral estoppel is applicable.''

This finding is to the effect that two issues in the Hooker municipal court action, namely, the Contractor's performance of the terms of the contract between the parties, and the liability for the asphalt entering the city sewers were decided in the Hooker case and that the doctrine of collateral estoppel prevents those issues from being relitigated and redecided in the case before us.

■ We do not believe that the issue of the Contractor's due performance of his contract with the City was an issue raised in the municipal court action by the City's cross-complaint on its indemnity provision against the Contractor and his subcontractor. The judgment that the City recover nothing on its cross-complaint was based on the findings, referred to previously, that the damage there involved was due solely to the City's negligence and not to any act by either of the cross-defendants. Under *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411, 414-415 [340 P.2d 604], a general exculpatory provision is ineffective against the indemnitee's own negligence. Therefore, the sole issue raised by the City's cross-complaint in the municipal court action was the issue of whether the City's negligence or that of the Contractor or his subcontractor caused the damage there involved; and there was no issue between the City and the Contractor in that case respecting the Contractor's performance of his contract with the City apart and aside from and independent of the negligence issue.

This being the case, the finding in the municipal court action of due performance of the contract by the Contractor and his subcontractor must be regarded as surplusage and immaterial and unnecessary to its judgment. Consequently,

the municipal court judgment cannot be said in this case to collaterally estop the City on this issue of the Contractor's due performance of the contract between the parties. (Code of Civ. Proc., § 1911; *Albertson* v. *Raboff,* 46 Cal.2d 375, 385 [295 P.2d 405]; *Sealite, Inc.* v. *Finster,* 149 Cal.App.2d 612, 620 [309 P.2d 51]; Restatement, Judgments, § 68, Comment o.)

But in this connection it is to be noted that the finding in the municipal court action of due performance of the contract by the Contractor and his subcontractor is merely part of an overall finding concluding "and [they] are not guilty of any negligence contributing to the plaintiffs [*sic*] loss."

Likewise, in this case, although technically the issue of the Contractor's due performance of the contract was raised by the pleadings and is expressly specified by both parties in the joint pretrial statement, which is a part of the pretrial order, this issue has neither meaning nor consequence apart from and independent of the negligence issue. The Contractor's express allegation in his complaint that his work and performance under his contract with the City were duly accepted by the City, is expressly admitted by the City; and the City's express denial in its answer of due performance of the contract on the part of the Contractor is specifically limited to its subsequent allegations respecting liability for damage to the sewers involved. Therefore, in this case as well, the due performance issue is properly treated in context as merely another label for the negligence issue.

Collateral estoppel, or estoppel by judgment, is the secondary aspect of res judicata. A final judgment in a prior action between the same parties, or their privies, prevents the relitigation in a subsequent action between them of issues of fact, actually and necessarily litigated and determined between them in the prior action, though the causes of action in the two actions differ. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.,* 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control,* 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758]; *Todhunter* v. *Smith,* 219 Cal. 690, 694-695 [28 P.2d 916]; Restatement, Judgments, § 68.)

The issue of the City's negligence causing the damage to the sewers involved was actually and necessarily litigated in the municipal court action. In order to reach physically, block and damage the sewer belonging to Hooker, involved in the prior action, the asphalt had to pass through, block and

damage the City's main sewer involved in this action. Any household sewer here involved was damaged essentially in exactly the same way Hooker's sewer was damaged. The finding in the Hooker case of negligent causation of the damage against the City is therefore binding on the City in this case. (Cf. *San Francisco Unified School Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434, 442-443 [328 P.2d 785], hear. denied; *County of Los Angeles* v. *Cox Bros. Constr. Co.*, 195 Cal.App.2d 836, 838-839 [16 Cal.Rptr. 250], hear. denied.)

█ Furthermore, the legal conclusion in that case that the negligence of the City rendered the indemnity provision unenforceable by it against its indemnitor, the Contractor, is likewise binding on the City in this case since the causes of action in the two cases arise out of the same subject matter and transaction and since no injustice will thereby result. (*Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control, supra*, 57 Cal.2d 749, 757; *Pacific Maritime Assn.* v. *California Unemp. Ins. Appeals Board*, 236 Cal.App.2d 325, 333-334 [45 Cal.Rptr. 892], hear. denied; Restatement, Judgments, § 70.)

█ The City, however, takes the position that it is unjust to it to collaterally estop it in this action by a judgment rendered by the municipal court in a prior action where the effect of such estoppel is to make the municipal court's earlier judgment effective in this action for an amount in excess of that inferior court's monetary jurisdiction. The overwhelming weight of authority, both in California and throughout the United States, is opposed to this position of the City, (*Todhunter* v. *Smith, supra*, 219 Cal. 690, 695; Note 83 ALR 2d 977, 996), and we see no merit in it whatsoever. Issue was joined in the action before us long before the municipal court action came to trial. The City had its day in court on both the factual and legal issues with respect to the effect of its negligence upon the indemnity obligation of the Contractor to it under the contract between the parties. Accordingly, the sound public policy of limiting litigation, upon which the doctrine of collateral estoppel is based, quite properly prevents its relitigating the same issues in this case. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra*, 58 Cal.2d 601, 605.)

The judgment, from which this appeal is taken, is affirmed.

Ford, P. J., and Shinn, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.