[No. B071061. Second Dist., Div. One. Aug. 3, 1993.]

In re TANYA H. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDERN'S
SERVICES, Plaintiff, v.
TONY B., SR., Defendant and Appellant;
THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Real
Parties in Interest and Respondents.

## COUNSEL

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Real Parties in Interest and Respondents.

## OPINION

**VOGEL (Miriam A.), J.**—In dependency proceedings, an indigent parent is entitled to court-appointed counsel who "shall continue to represent the parent . . . unless relieved by the court upon the substitution of other counsel or for cause. . . ." (Welf. & Inst. Code, § 317, subd. (d).)[1] Without reference to this statute, the Los Angeles Juvenile Dependency Court adopted a "policy memorandum" providing that attorneys appointed to represent indigent parents are to be relieved following the first review of a permanent placement plan (§ 366.25, subd. (d)) "unless good cause to the contrary is individually shown by any attorney seeking to remain appointed on the case." On this appeal, we hold the policy is inconsistent with the statute and we therefore reverse an order relieving a father's attorney.

### FACTS

The two minors involved in this case were both born under the influence of cocaine, one in 1986 (Tony B.), the other (Tony's sister, Tanya H.) in 1988. Although each child was the subject of separate juvenile court proceedings at the time of birth, those proceedings were terminated in 1987 (Tony's case) and 1989 (Tanya's case). In 1990, the Los Angeles County Department of Children's Services petitioned the juvenile court to again intervene on the minors' behalf because the mother (Tuesday H.) was addicted to cocaine and unable to care for the children and the father (Tony B., Sr.) was unwilling and unable to care for them. (§ 300.) Shortly thereafter, attorneys were appointed to represent the children, the mother and the

---

[1]All section references are to the Welfare and Institutions Code.

father. (§ 317.) On December 18, 1990, at a default jurisdictional hearing, the petition was amended and sustained (§ 355) and the children were placed with their paternal grandmother.

On March 4, 1992, all three attorneys attended a permanency planning hearing where, without objection, the juvenile court determined there was no reasonable possibility of reunification and found it was unlikely that either minor could or would be adopted. (§§ 366.21, 366.25, 366.26.) DCS was ordered to facilitate long-term foster care and the existing placement order was continued.

On September 2, 1992, the juvenile court reviewed DCS's permanent plan (§ 366.25, subd. (a)) and, without objection, accepted DCS's recommendations and ordered that the children remain with their grandmother in long-term foster care. After noting that the mother had not seen the children for an entire year, the court relieved the mother's attorney (he was not present at the hearing). Over the father's objection, the juvenile court then relieved his attorney "pursuant to the memo" and, the next day, denied the father's petition for rehearing (which raised the same points articulated the day before). The father appeals from the order relieving his attorney.[2]

## DISCUSSION

As he did in the trial court, the father claims on this appeal that the policy memorandum violates the statute. We agree, and therefore do not reach his alternative due process claims.

### I.

The statute is clear on its face. Under subdivision (b) of section 317, when it appears to the court that a parent or guardian of the minor desires counsel but "is presently financially unable to afford and cannot for that reason employ counsel, and the minor has been placed in out-of-home care, or the petitioning agency is recommending that the minor be placed in out-of-home care, the court shall appoint counsel, unless [the right to counsel is knowingly and intelligently waived]." Subdivision (c) of section 317 covers the appointment of counsel for the minor. Under subdivision (d) of section 317, "[t]he counsel appointed by the court *shall* represent the parent, guardian, or

---

[2]In its respondent's brief, the County asserts the appellant's brief filed in this court was filed by counsel for the child, on behalf of the child, who did not file a notice of appeal. First, the brief was filed by the father (Tony Sr.), not "the child" (Tony Jr.), represented by an attorney we appointed for this purpose. Second, this case involves two children, not a single child. Third, we cannot tell from its brief whether county counsel is representing DCS, the County or the juvenile court.

minor *at the detention hearing and at all subsequent proceedings* before the juvenile court. *Counsel shall continue to represent the parent or minor unless relieved by the court upon the substitution of other counsel or for cause.* The representation shall include representing the parent or the minor in termination proceedings and in those proceedings relating to the institution or setting aside of a legal guardianship." (Italics added.)

■ There is nothing vague or ambiguous about the legislative command —in the absence of a waiver, the juvenile court must appoint an attorney to represent an indigent parent at the detention hearing and at all subsequent proceedings, and the attorney *shall* continue to represent the parent unless relieved by the court upon the substitution of other counsel or for cause. Accordingly, there is no need to divine the Legislature's intent by reference to the statute's history or otherwise—we simply construe the statute to mean what it says. (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317] [if statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it].)

## II.

The juvenile court's policy memorandum[3] was adopted on July 16, 1992, and amended on September 1, 1992. As relevant to the issue in this case, this is what it says:

"The Juvenile Court is currently involved in a far-reaching discussion with the Superior Court, the Los Angeles County Grand Jury, the Los Angeles County Board of Supervisors and its Chief Administrative Officer (CAO), as well as with the Dependency Court Legal Services Corporation (DCLS) and the members of the Juvenile Courts Bar Association (JCBA), on issues regarding the quality and costs of the legal representation provided to parents and children in the Dependency court system.

"These discussions, which are taking place against the background of [the] worst Federal, State and County fiscal crisis in recent memory, compels [*sic*] the Court to look at alternative methods for controlling expenditures for legal services, without adversely affecting the constitutional rights of individual clients or negatively impacting the court's mandatory time frames for

---

[3]The memorandum, which issued over the signature of the Supervising Judge of the Dependency Court, is addressed to "All Dependency Court Judges, Commissioners and Referees, County Counsel, Dependency Court Legal Services, and Juvenile Court's Bar Association Attorneys, Department of Children's Services Management, and Courtroom [S]taff, Juvenile Court Services Management and Courtroom [S]taff." The subject of the memorandum is "Mandatory Relief of Attorneys Following First Review of Permanency Plan (RPP) Hearing."

timely completion of arraignment/detention, adjudication and disposition hearings in dependency cases.

"The court must also ensure that a sufficient number of attorneys are available to staff an expanding dependency court. The recent necessity for transferring ten panel attorneys . . . points to a serious shortage in the availability of qualified, experienced dependency attorneys.

"Consistent both with these requirements and with its reading of current State and Federal Law, the Dependency Court establishes the following policy:

"(1) Effective immediately, each dependency judge, commissioner and referee, shall relieve all DCLS and Panel attorneys on every dependency case following the first Review of Permanency Planning Hearing (RPPH), unless good cause to the contrary is individually shown by any attorney seeking to remain appointed on the case. A preponderance of the evidence standard shall be applied by the court in determining whether good cause exists. This policy does not apply to attorneys representing parents . . . in Termination of Parental Rights actions, guardianships and in pending adoption proceedings. Such a policy is deemed to be non-prejudicial to parents . . . and is consistent with practices in other California counties.

"(2) All individual petitions to remain appointed on a case shall be in the form of a written declaration, accompanied by any Points and Authorities or supplemental documentation which may be appropriate. Such petitions shall be submitted to the court at the initial RPPH. Judicial officers are directed to carefully review and evaluate all petitions on a case-by-case basis. The facts of each case should be considered, as well as the needs of the particular parties represented and the likelihood of further contests. All findings relied upon by the court in making its determination shall be expressly articulated in its decision, which shall be made no later than 30 judicial days after the initial RPPH.[4]

". . . . . . . . . . . . . . . . . . . . . . . .

"(3) Court staff should be instructed to clearly and completely record all orders relieving or extending the appointment of attorneys in the RPP

---

[4]The September 1, 1992, amendment added the requirement that each dependency court bench officer "seeking to relieve attorneys in accordance with [the original policy memorandum] shall, prior to making any order relieving attorneys of their representation of any party, provide those attorneys with a meaningful opportunity to be heard, on the record, and to present objections, oral and documentary evidence, and arguments in opposition to the court's motion to relieve them as appointed counsel."

minutes. Further, all attorney fee declarations submitted to the court for payment on or subsequent to an RPP should be carefully checked and verified before being submitted to the court for review and signature.

"(4) All dependency cases in the post-dispositional phase of proceedings should be periodically reviewed to determine if continued legal representation is still needed. Such reviews are required, particularly in cases where children continue in long-term placement with relatives or long-term foster care. Judicial officers should also be careful to handle all proceedings designated as 'non-appearance' as true non-appearance reviews, that is, without a hearing in open court and the appearances of attorneys. . . ."

III.

 ██ █ Section 317, subdivision (d), provides for continuing representation by the appointed attorney at all postappointment proceedings "unless relieved by the court upon the substitution of other counsel or for cause."[5] The policy memorandum provides, inconsistently, for continuing representation only through the first permanency plan review hearing, without regard to cause and without substitution of a new attorney. There is no requirement in the statute that a parent establish, by a preponderance of the

---

[5]Although "for cause" is not defined by the statute, the term is neither vague nor ambiguous. In the absence of express guidelines, the purpose of a statute supplies the standards to be followed in its application. (*In re Petersen* (1958) 51 Cal.2d 177, 185-186 [331 P.2d 24, 77 A.L.R.2d 1291]; *Louis Stores, Inc.* v. *Department of Alcoholic Beverages Control* (1962) 57 Cal.2d 749, 760 [22 Cal.Rptr. 14, 371 P.2d 758]; see also *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 827 [129 Cal.Rptr. 443, 548 P.2d 1115].) The purpose of this statute is to provide an attorney for a parent who "desires counsel but is presently financially unable to afford and cannot for that reason employ counsel" (§ 317, subd. (a)) and the attorney, once appointed, is to represent the parent at "the detention hearing and at all subsequent proceedings before the juvenile court . . . unless relieved by the court upon the substitution of other counsel or for cause." (§ 317, subd. (d).)

So viewed, "for cause" must include some good reason personal to the individual sought to be removed (*Kennett* v. *Levine* (1957) 50 Wash. 212 [310 P.2d 244, 247]), one which affects or concerns the ability or fitness of the appointee to perform the duty imposed upon him (*Napolitano* v. *Ward* (N.D.Ill. 1970) 317 F.Supp. 79, 81; *Friedman* v. *State* (1969) 24 N.Y.2d 528 [301 N.Y.S.2d 484, 249 N.E.2d 369, 377]; *Cornman* v. *City of Philadelphia* (1955) 380 Pa. 312 [111 A.2d 121, 130] (conc. opn. of Chidsey, J.)) or relates to and affects the administration of the office (*McCallister* v. *Priest* (Mo. 1968) 422 S.W.2d 650, 657). Stated otherwise, "for cause" means inefficiency, incompetency or other kindred disqualifications. (*Thompson* v. *Civil Service Commission* (1943) 103 Utah 162 [134 P.2d 188, 194]; *Board of Street Com'rs* v. *Williams* (1903) 96 Md. 232 [53 A. 923, 925].)

The court's financial problems cannot affect the decision to *appoint* counsel for an indigent parent and it would be anomalous to consider those problems—which do not concern the ability or fitness of the attorney to perform his duty—as "cause" for *removal*. However sympathetic we may be to the juvenile court's efforts to function in the midst of a fiscal crisis, we must follow the statute and defer to the Legislature the decision whether to amend section 317.

evidence or otherwise, a continuing need for counsel. The right is unqualified. It follows ineluctably that the policy memorandum cannot stand. (*Hebert* v. *Harn* (1982) 133 Cal.App.3d 465, 470 [184 Cal.Rptr. 83] [a local rule is invalid if it conflicts with or is inconsistent with a statute].)

## IV.

Our conclusion that the juvenile court's fiscal problems cannot justify an interference with a statutory right to counsel does not leave the juvenile court without alternatives. The court can (and should) monitor appointed counsel's bills. If there is work legitimately to be done, the attorney ought to be paid for doing it. Conversely, if no work is required, there ought not to be any bill at all. In the case before us, for example, it is unlikely that counsel for the father would be required to do anything during the foreseeable future. The father apparently had no interest at all in obtaining custody of his children at the time these proceedings were before the juvenile court (he did not bother to provide any statement to DCS) and, as his own mother told DCS, "she wants 'the children's parents to get their act together and maybe one day get their children back.' Until then, she states that she wants to continue to provide long-term foster care."[6]

In all cases, however, the statute requires that the attorney remain of record, to receive notices of further court proceedings and to keep the parent advised. (Cf. *In re Robert A.* (1992) 4 Cal.App.4th 174, 190-192 [5 Cal.Rptr.2d 438].) Indeed, even if the policy memorandum could survive comparison to the statute, it would cause problems—because it fails to require notice to the parent of the removal of the attorney or any warning about what might happen in the absence of counsel. (Compare L.A. Super. Ct. Law and Discovery Manual, [¶] 230 et seq. [in civil litigation, notice must be given to the client when the attorney of record withdraws].)

Finally, we believe the Supreme Court's recent holding in *Cynthia D.* v. *Superior Court* (1993) 5 Cal.4th 242 [19 Cal.Rptr.2d 698, 851 P.2d 1307]— that the standard of proof for termination of parental rights under the child dependency statutes comports with due process—compels the conclusion we

---

[6]According to the County, we ought to penalize parents who are unable to articulate to the juvenile court reasons for continued appointment because, "[w]ithout a mechanism for relieving counsel in such cases, counsel for the parents continue to appear with little if any purpose other than to collect the County paid counsel fee for the appearance." Aside from the fact that this broad generalization finds no support in the record, we think the county has the cart before the horse—it offers no answer to the claim that the policy conflicts with the statute and its concern about its own pocketbook is therefore irrelevant.

reach in this case.[7] The process contemplates the involvement of counsel for the parents, as well as the children, and the juvenile court simply cannot impose limitations on statutorily mandated rights without throwing a monkey-wrench into the entire system. (*Cynthia D.* v. *Superior Court, supra,* 5 Cal.4th at p. 255 ["The California dependency statutes . . . provide the parents a . . . level playing field. Not only must the court appoint counsel for a parent unable to afford one whenever a petitioning agency recommends out-of-home care (§ 317, subd. (b)), but such counsel must continue to represent the parent 'at all subsequent proceedings . . . unless relieved by the court upon the substitution of other counsel or for cause.' (§ 317, subd. (d).)"].)

## DISPOSITION

The order is reversed and the matter is remanded to the juvenile court with directions to vacate its order relieving the father's attorney.

Ortega, Acting P. J., and Masterson, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 14, 1993.

---

[7]Although the policy memorandum, by its own terms, does not apply in proceedings to terminate parental rights, there are serious and important issues in any case in which a child is removed from the parents' home, even temporarily. In this case, for example, the grandmother may at some point become unable or unwilling to continue to care for the children and the father may decide to become involved when a determination is made to place the children with someone other than his own mother. Without an attorney's continuing involvement, he may well be at a disadvantage when this sort of issue arises. For this reason, we believe the comparison to *Cynthia D.* is valid. (See also *In re Emilye A.* (1992) 9 Cal.App.4th. 1695, 1709 [12 Cal.Rptr.2d 294] [few lay people are equipped to respond to the legal complexity of dependency proceedings and the "potential pitfalls faced by an unrepresented parent may be further compounded by the fact that once a petition has been filed, the county usually is represented by its own attorney, who is educated in the law and experienced in representing the county at dependency hearings. . . . [¶] If the parent is unrepresented and the county has legal counsel, the contest between the two sides, in many cases, would be so tilted in favor of the county's position that the purpose of the adversarial proceeding, i.e., an accurate and just decision, would not be obtainable"].)